HENRY P. KIDDER, Assignee, etc., Respondent, *v.* WILLIAM T. HORROBIN et al., Appellants.

A State court has jurisdiction of an action by an assignee in bankruptcy to recover a debt due the bankrupt.

The amendment of 1874 to section first of the Bankrupt Act, providing that the court having charge of the estate of a bankrupt, may direct that any of his legal assets or debts, not exceeding $500, be collected in the courts of the State, did not have the effect to confer or take away jurisdiction of the State court, but simply to allow the Federal courts to decline to entertain actions at common law in which the assignee is a party, where the debt demanded is less than the amount which determines the jurisdiction of these courts in other cases.

A suit by an assignee in bankruptcy, to collect a debt due the bankrupt, is not a matter of proceeding in bankruptcy within the meaning of section 711 of the United States Revised Statutes, declaring the jurisdiction of the State courts to be exclusive in the cases specified.

An intention to deprive State courts of jurisdiction, will not be inferred from doubtful language; nor will the words of a statute be extended beyond their strict meaning to accomplish this result.

Defendants were guarantors of a letter of credit, issued by R. B. & Co. to F. A. L. & Co., to be used in the purchase of merchandise, the bills of lading to be made out to the order P. R. &·Co., the agents of R. B. & Co. By the terms of the guaranty, it was agreed that the property purchased with the bills of lading should be pledged to R. B. & Co. as collateral, with authority to sell, etc. Bills of lading of property purchased with funds procured by the letter of credit were sent to P. R. & Co., who delivered them to F. A. L. & Co.; the latter sold the property and made payments to P. R. & Co., who applied them upon the general indebtedness of F. A.

L. & Co. to them. R. B. & Co. brought an action in Massachusetts against defendants upon the guaranty, and procured an order of arrest. Defendants were arrested, gave bail, and subsequently settled the suit, giving drafts for amount of the advances; they knew at the time that the bills of lading and the property had been delivered to F. A. L. & Co., but did not know of the payment to and application of the proceeds by P. R. & Co. In an action upon a draft given in renewal of one of those given on settlement; *held*, that, no fraud or mistake being shown, defendants were precluded by the settlement from any defense based upon the use made by P. R. & Co. of the bills of lading, and proceeds of the property; that defendants having knowledge of the fact that P. R. & Co. had parted with the bills of lading were put upon inquiry as to the use made of the proceeds.

G. plaintiff's assignor was one of the firm of R. B. & Co., the draft was produced in court; *held*, that this established *prima facie* plaintiff's title thereto.

(Argued December 21, 1877; decided January 15, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought by plaintiff, as assignee in bankruptcy of Charles H. Glynn, against defendant Horrobin as acceptor, and defendant Johnston as indorser of a draft drawn May 18, 1875, by F. A. Leigh & Co. on Horrobin, payable to the order of Johnston.

The said bill of exchange was drawn, indorsed and accepted under the following circumstances, viz: On the 15th of January, 1874, Page, Richardson & Co., of Boston, by a letter of credit, bearing date that day, authorized Evan Leigh, of Manchester, England, to value on Robert Benson & Co., of London, at sixty or ninety days sight for account of F. A. Leigh & Co., of Boston, for any sum or sums not exceeding in all £5,000 sterling, for cost of merchandise to be shipped to Boston, the bills of lading to be filled up to the order of Page, Richardson & Co. The bills were to be drawn and shipments completed within six months from the date of the letter, and the drafts to be accompanied by letters of advice and bill of lading, on receipt of which documents in order,

the bills were to be duly honored; remaining bills of lading and certified invoice to be sent to Page, Richardson & Co., of Boston, they agreeing that all bills drawn in compliance with the terms of said credit should be duly honored on presentation at the counting-house of Robert Benson & Co., London. At the same date, the said F. A. Leigh & Co. and the defendants Horrobin and Johnston, the said defendants acting upon the request of Leigh & Co., and for their accommodation solely, made and delivered an agreement in writing in reference to said credit, of the material portion of which the following is a copy, viz:

"BOSTON, *July* 15, 1874.

" Received the original of the foregoing letter of credit for five thousand (5,000) pounds sterling. In consideration whereof, we hereby agree with the said Robert Benson & Co. to furnish them, by the hands of said Page, Richardson & Co., with sterling exchange, or its equivalent, satisfactory to the said Robert Benson & Co., or the said Page, Richardson & Co., to meet the payment in London of whatever may be negotiated by virtue of said letter of credit, at the maturity of the bills, together with all charges of interest at the Bank of England rate, not less than at the rate of six per cent per annum, with cost of stamps, and a charge of one per cent commission on the whole sum payable in exchange; and we also agree to give security for the same, by deposit with the said Page, Richardson & Co., at any time previous to the maturity of said bills, if required by the said Robert Benson & Co., or Page, Richardson & Co., and all property which shall be purchased by means of the above credit, and the proceeds thereof and the policies of insurance thereon, together with the bills of lading, are hereby pledged and hypothecated to the said Robert Benson & Co. as collateral security for the payment as above provided, and held subject to their order on demand, with authority to take possession and dispose of the same at their discretion for their security and reimbursement."

Under and in pursuance of said letter of credit, bills were drawn on, accepted and paid by Robert Benson & Co., to the amount of about five thousand pounds. Letters of advice and bills of lading of goods purchased with proceeds thereof were sent to Page, Richardson & Co., who were the agents of Robert Benson & Co., and said bills of lading were by them delivered to F. A. Leigh & Co., who sold and disposed of the goods. Page, Richardson & Co. were creditors of Leigh & Co., and all moneys paid by Leigh & Co. to them were credited on general account, and no part thereof applied to the payment of any bills drawn under said letter of credit. The amount paid by Leigh & Co., and received by Page, Richardson & Co., did not appear, or what was the value of the merchandise covered by said bills of lading, or how much was realized from sales thereof. The firm of F. A. Leigh & Co. became embarrassed and unable to pay the bills drawn as aforesaid, and on said 6th May, 1874, Page, Richardson & Co. by letter demanded of defendants sterling exchange for the amount thereof; and on the eighth of May requested defendants, in view of the condition of the affairs of Leigh & Co., to come to Boston and act with them. The defendants went to Boston, and on the 27th day of May, 1874, Robert Benson & Co. commenced a suit against them in the United States Circuit Court of Massachusetts to recover the amount of the bills drawn under said letter of credit, and caused them to be arrested and held to bail. The defendants immediately thereafter gave the necessary bonds, and were discharged from arrest. On or about June 23d, 1874, defendants being under bonds as aforesaid, in order to be released from said suit, and that their bondsmen therein might also be discharged, settled the same by giving their bills and acceptances at four, eight and twelve months for the amount claimed, and said suit was thereupon discontinued, the bonds canceled, and bail discharged. The defendants paid a part of the amount of said bills and acceptances, and gave new bills and acceptances in renewal of the residue, of which the bill in suit is one. At the time of the settlement

defendants knew that the bills of lading had been delivered to F. A. Leigh & Co., and that they had received the property, but did not know as to the payment of any of the proceeds to Page, Richardson & Co., or as to its application.

*Samuel Hand,* for appellants. The State courts had no jurisdiction of the subject-matter of this action. (*Olcott* v. *McLean,* 10 Hun, 277; U. S. R. S., 969; *Frost* v. *Hotchkiss,* 1 Abb. [N. C.], 27; *Cook* v. *Whipple,* 55 N. Y., 150; *Claflin* v. *Houseman,* 3 U. S. R., 133; U. S. R. S., § 711, p. 134, 135; *Dudley* v. *Mayhew,* 3 N. Y., 9; *The Belfast,* 7 Wal., 624; *People* v. *White,* 24 Wend., 520; *Heyer* v. *Burger,* Hoffm., 1; *Griffin* v. *Doningnez,* 2 Duer, 656; *People* v. *Marine Court,* 3 Abb., 309; *Brookman* v. *Hamill,* 43 N. Y., 554.) The act of Page, Richardson & Co., in applying the proceeds of the merchandise covered by the bills of lading on an old debt of Leigh & Co., to themselves discharged defendant as guarantors. (*Pitts* v. *Congdon,* 2 N. Y., 352; *Vose* v. *Fla. R. R. Co.,* 50 id., 369; Story's Eq. Jur., § 326; *Capel* v. *Butler,* 2 Sim. & S., 457; *Law* v. *East India Co.,* 4 Ves., 833.) The drafts given on the pretended settlement being for new consideration were void, unless in the hands of a *bona fide* purchaser. (*Evans* v. *Begley,* 2 Wend., 343; *Boutel* v. *Owens,* 2 Sand. 655, 2 Code, 40; *Wilder* v. *Baumtanck,* 3 How., 81; *Osborn* v. *Robins,* 36 N. Y.. 365; *Eadie* v. *Slimmon,* 26 id., 9; *Loomis* v. *Rock,* 56 id., 462; *Richards* v. *Vanderpoel,* 1 Daly, 371; *Fashay* v. *Ferguson,* 5 Hill, 154.) Defendants, having given the drafts in ignorance of the payment of the proceeds of the merchandise to Page, Richardson & Co., were relieved from the effect of the pretended settlement. (*Otter* v. *Brevoort, Pet. Co.,* 50 Barb., 47; *Foss* v. *Hildreth,* 10 Al. [Mass.], 76; *Barnwell* v. *Threadjell,* 3 Jones Eq. [N. C.], 50; *Anders* v. *Bacon,* A. K. Marsh. [Ky.], 51; *Rose* v. *McLaughlin,* 7 Grat. [Va.], 86.

*Amasa J. Parker,* for respondents. A draft taken under duress is not void, but voidable only. (*Farr* v. *Pymer,* 2

Ch. Dec. 20; 1 Brightley's Dig., 1163, § 16; 1 Pars. on
Con., 322, 344.) The fact that a settlement was made with-
out fraud or misrepresentation, was of itself a perfect defense.
(*Russell* v. *Cook*, 3 Hill, 504; *Evans* v. *Hunter*, 28 N. Y.,
389; *Farmers' Bk.* v. *Blair*, 44 Barb., 641; *I'Kesan* v.
*Barclay*, 2 Penn., 531; *Stewart* v. *Ahrenfeldt*, 4 Den., 189;
*Tanner* v. *Walter*, 2 Edw. Ch., 600.) Defendants are not
in a position to raise the point that Charles H. Glynn is not
the owner and holder of the notes in question. (*Gurnsey* v.
*Burns*, 25 Wend., 411; *Gage* v. *Kendall*, 15 id., 640;
*Wickes* v. *Adirondack*, 2 Hun, 112; *James* v. *Chalmers*, 6
N. Y., 209.) The State courts have jurisdiction of these
actions. (*Goodrich* v. *Wilson*, 119 Mass., 429; U. S. R. S.,
§§ 629, 639, 711, 4972, 4979; U. S. Stat., 1867, chap. 176,
§§ 1, 2; *Ward* v. *Jenkins*, 10 Metc., 583; *Hanson* v. *Her-
rick*, 100 Mass., 323, 326; *Otis* v. *Hadley*, 112 id., 100;
*Smith* v. *Mason*, 14 Wal., 419; *Marshall* v. *Knox*, 16 id.,
551; *Stickney* v. *Wilt*, 23 id.; *Wente* v. *Young*, 5 Wkly.
Dig., 595; *Cook* v. *Whipple*, 55 N. Y., 150; *Stevens* v.
*Mech. Bk.*, 101 Mass., 109; *Forbes* v. *Howe*, 102 id., 428;
2 Carter, 216; 7 Bush., 66; 64 Penn., 74; Bump's Bank'y
[10th ed.], 231; *Payson* v. *Dietz*, 8 Bank. Rep., 193; 2
Dil., 504; *Delafield* v. *State of Illinois*, 2 Hill, 160; *Martin*
v. *Hunter's Lessee*, 1 Wheat., 334–337; *U. S.* v. *Lathrop*,
17 J. R., 4; 1 Kent, 391; *Cohen* v. *Virginia*, 6 Wheat, 418;
Const. U. S., art. 1, § 8.) The question of jurisdiction can-
not now, for the first time, be raised by defendants. (*Mays*
v. *Fritton*, 20 Wal., 414.)

ANDREWS, J. This action is brought by the plaintiff as
assignee in bankruptcy of one Charles H. Glynn, against the
indorser and acceptor of a draft drawn May 18, 1875, by F.
A. Leigh & Co., and which came to the hands of the plaintiff
as part of the assets of the bankrupt. The point is now
taken for the first time, that the State courts have no juris-
diction of an action by an assignee in bankruptcy to recover
a debt owing to the bankrupt.

It is conceded that prior to 1874, State courts had concurrent jurisdiction with the Federal courts, in actions by assignees in bankruptcy, and cases arising under the Bankrupt Act. This is conclusively settled by adjudication both in the Federal and State courts. (*Claflin* v. *Houseman*, 93 U. S. R., 130; *Cook* v. *Whipple*, 55 N. Y., 150.) It is now accepted as the general rule upon the subject, that State courts have concurrent jurisdiction with the Federal courts in cases arising under the Constitution, laws, or treaties of the United States, unless excluded by express provision, or from the nature of the particular case. (1 Kent, 397; *Ward* v. *Jenkins*, 10 Met., 583; *Claflin* v. *Houseman, supra.*) By section one of the Bankrupt Act, as originally enacted March 2, 1867, the district courts of the United States were constituted courts of bankruptcy, with original jurisdiction in their respective districts in all matters and proceedings in bankruptcy, and with authority to hear and adjudicate upon the same according to the provisions of the act. The section declares that the jurisdiction shall extend to certain enumerated cases; among others, " to the collection of all the assets of the bankrupt." In construing this section it has been held, that as jurisdiction in bankruptcy was statutory, it was necessarily exclusive in the courts which were designated as courts of bankruptcy, and vested with jurisdiction in bankrupt proceedings by the Bankrupt Act. But it was also held that the declaration, in the same section, that the jurisdiction of the districts courts should extend to the collection of the assets of the bankrupt, did not exclude the jurisdiction of the State courts in actions by the assignee to recover the assets of the bankrupt. The same construction was given to a similar provision in the Bankrupt Act of 1841. (*Ex parte Christy*, 3 How. [U. S.], 319; *Nugent* v. *Boyd*, id., 426; *Ward* v. *Jenkins*, 10 Mctc., 583.)

The first section of the Bankrupt Act was amended by the act of Congress approved June 22, 1874, by adding thereto this proviso : "Provided that the court having charge of the estate of any bankrupt, may direct that any

of the legal assets or debts of the bankrupt as contradistinguished from equitable demands, shall, when such debt does not exceed $500, be collected in the courts of the State where such bankrupt resides having jurisdiction of the claims of such nature and amount." It is claimed that this proviso is to be construed as conferring upon the State courts jurisdiction of actions for the collection of the debts and assets of the bankrupt, directed by the bankrupt court to be brought in the State courts, and by implication to exclude jurisdiction in all other cases. We, however, concur in the view expressed by the Supreme Court of Massachusetts, in *Goodrich* v. *Wilson* (119 Mass., 429), that the effect of this amendment is not to confer or take away jurisdiction of the State court, but simply to allow the Federal courts to decline to entertain actions at common law, to which the assignee is a party, in which the debt demanded is less than the amount which determines the jurisdiction of these courts in other cases.

It is also claimed that the State courts are deprived of jurisdiction of actions by assignees in bankruptcy, to recover debts due to the bankrupt, by section 711 of the Revised Statutes of the United States, which declares that the jurisdiction vested in the courts of the United States in the cases and proceedings mentioned in the section, shall be *exclusive* of the courts of the several States. This declaration is followed by a specification of eight classes of cases of which the sixth is " of all matters and proceedings in bankruptcy." The argument is that a suit brought by an assignee in bankruptcy to collect a debt due to the bankrupt is a matter and proceeding in bankruptcy, and that the jurisdiction of the State courts is therefore excluded. We do not think that a suit brought for this purpose, is a matter or proceeding in bankruptcy within the meaning of section 711. It is to be noticed that six of the eight classes of cases mentioned in the section are mentioned also in the judiciary act of 1789, and jurisdiction therein is by that act vested exclusively in the Federal courts. The fifth specification in section 711 is

" cases arising under the patent-right or copyright laws,"
and it had been held before this section was passed that it
was the intention of the patent laws to confer on the Federal
courts exclusive jurisdiction in cases arising under them.
This was the construction given to these laws by the courts.
(*Dudley* v. *Mayhew*, 3 N. Y., 9; *Cook* v. *Whipple*, *supra;*
BRADLEY, J., 3 Otto, 140.) It will be seen, therefore, that
as to seven of the eight classes of cases specified in section
711, that section is a mere codification of the law as it stood
when the section was passed. If the construction of the
language of the sixth specification insisted upon by the
defendants prevails, we must conclude that Congress intended,
in respect to the class of cases therein mentioned, to depart
from the general purpose of the section, and to make a radi-
cal change in the prior policy of the law.

This was not, we think, the intention of Congress, and that
a construction which would oust the State courts of jurisdic-
tion of common law actions, in cases where an assignee in
bankruptcy is a party, is not admissible. It may be difficult
to make a complete definition of what are matters and
proceedings in bankruptcy, within section 711, but it
may be stated in general terms, that they are the matters
and proceedings which pertain to the special and peculiar
jurisdiction of the Federal courts as courts of bankruptcy.
The adjudication of the bankruptcy; the appointment of
assignees and other agents for the administration of the
system; the vesting of the title to the bankrupt's property
in the assignee ; the marshaling and distribution of the
assets; the discharge of the bankrupt from his debts; these
and other like powers belong to the jurisdiction in bank-
ruptcy, and are matters and proceedings in bankruptcy of
which State courts have no jurisdiction. But when a com-
mon-law action is an appropriate remedy to enforce a right
asserted by an assignee in bankruptcy, whether the right is
given by the bankrupt act, or existed in favor of the bank-
rupt before the bankruptcy, an action to enforce or vin-
dicate the right is not a matter or proceeding in bank-

ruptcy within section 711. The exercise of the original and ordinary jurisdiction of the State courts in such cases is in no proper sense an exercise of jurisdiction in bankruptcy. The fact that the plaintiff makes his title under the Bankrupt Act by assignment from the debtor, or by force or operation of the act itself, does not make the suit a matter or proceeding in bankruptcy, any more than would a suit brought by an assignee appointed under the State insolvent law, to recover a debt owing to the insolvent, be a proceeding or matter in insolvency. It is quite clear that the State courts are not deprived of jurisdiction of actions, by assignees, to collect the assets of the bankrupt by the section referred to. If this was the intention of Congress, it is reasonable to suppose that it would have been explicitly declared, and an intention to deprive State courts of jurisdiction will not be inferred from doubtful language, nor will the words of a statute be extended beyond their strict meaning to accomplish this result. Section 429 of the Revised Statutes does not aid the defendant. It is simply a re-enactment of that part of the first section of the act of 1867, which declares to what matters the jurisdiction of the district court shall extend. We conclude, therefore, that the objection to the jurisdiction is not well taken.

The defendants are concluded from the defense based upon the use made by Page, Richardson & Co., as agents of Robert Benson & Co., of the bills of lading, and of the proceeds of the property embraced therein, by the settlement made by them of the suit brought in the United States Court to recover on their guaranty of the credit given by Benson & Co. to Leigh & Co. If the defendants were prejudiced by the course of dealing by Page, Richardson & Co., with the bills of lading, or the application of the proceeds, it was a matter which might properly have been urged and determined in that action. If their liability as sureties was discharged, in whole or *pro tanto,* by the acts of Page, Richardson & Co., it was a matter of defense, and the defendants should have taken their ground at that time. But they preferred to settle the claim,

and gave their paper for the whole amount of the advances made on the letter of credit. Upon the paper being given, the bill in the suit was discharged and the bond canceled. There was, upon the facts found, no duress, or any fraud, concealment or misrepresentation on the part of Robert Benson & Co., or their agents, in respect to the settlement. The defendants knew that the bills of lading had been delivered by Page, Richardson & Co. to F. A. Leigh & Co., and that F. A. Leigh & Co. had received the property. They did not know that the proceeds had been paid to Page, Richardson & Co., or that they had been applied on another account. But they made no inquiry, and they were put upon inquiry by the fact which they did know, that Page, Richardson & Co. had parted with the bills of lading. Under these circumstances the defendants cannot resist the payment of the drafts in question, upon the facts growing out of the original transaction. That matter was concluded by the settlement, and no fraud or mistake is shown which,. within the cases, would authorize the matter to be reopened. (*Russell* v. *Cook*, 3 Hill, 504; *Stewart* v. *Ahrenfeldt*, 4 Den., 189; *Farmer* v. *Walter*, 2 Ed. Chy., 600; *Crans* v. *Hunter*, 28 N. Y., 389.)

The possession of the draft by Glynn, the plaintiff's assignee was presumptive evidence of his ownership; and this presumption was not rebutted by the evidence on the trial·

Glynn was one of the firm of Robert Benson & Co., upon whose claim the draft was given, and was therefore part owner of the draft when it was given. The paper is produced in court by the assignee of Glynn, and this *prima facie* establishes the plaintiff's title. The referee could not, as matter of law, have held that the note did not belong to Glynn, and the question of fact is found for the plaintiff.

We think there was no error committed on the trial, and that the judgment should be affirmed.

All concur.

Judgment affirmed.