HALL. The D. M. v. The JOHN LAND. See Case No. 3.939.

HALL, The FRANK A. See Case No. 5,052.

HALL, The JOSEPH. See Case No. 7,539.

## Case No. 5,956.

### HALLACK et al. v. TRITCH.

[17 N. B. R. 293; [1] 10 Chi. Leg. News, 219.]

Circuit Court, D. Colorado. 1878.

BANKRUPTCY—JURISDICTION OF CIRCUIT AND DISTRICT COURTS—ASSIGNEES—RIGHT OF CREDITOR TO TAKE GOODS OF INSOLVENT IN EXCHANGE FOR SECURITY.

1. The circuit courts have concurrent jurisdiction with the district courts of all actions by an assignee against persons claiming an adverse interest in the estate of a bankrupt.

[Cited in Clark v. Ewing, 3 Fed. 86.]

[Cited in Seavey v. Naples, 94 Ind. 207.]

2. No suit by an assignee for a sum exceeding five hundred dollars can be prosecuted in a state court.

3. The objection that there was no direction from the bankrupt court to bring the suit, cannot be first raised in the appellate court.

4. In an action brought by an assignee to set aside a sale or transfer of goods, as having been made in violation of the bankrupt act,—section 5128, Rev. St. [14 Stat. 517],—the declaration must set out the facts of the illegal transaction.

5. As between the parties to a chattel mortgage, the circumstance that the mortgagees allowed the mortgagor to retain possession of the mortgaged property, after condition broken, will not affect the validity of the mortgage.

6. When a secured creditor takes goods in fair exchange for the security, the transaction is not in fraud of the bankrupt act.

[At law. This was an action of trover brought by George Tritch, assignee of Wilcox & Watterson, against Hallack & Brother, to recover damages for the wrongful detention of a lot of glass.]

Belden & Powers and Blake & Jacobson. for plaintiffs in error.

Squires & Decker, for defendant in error.

HALLETT, District Judge. This was an action brought in the probate court of Arapahoe county, on the 24th day of December, 1874, during the existence of the late territorial government. Judgment was entered in that court on the 29th day of January,

[1] [Reprinted from 17 N. B. R. 293, by permission.]

1875, and the record was immediately removed into the supreme court of the territory by writ of error, and it was pending in that court on the 1st day of August, 1876, when the territory became a state. Upon the establishment of the state government, the supreme court of the state became the successor of the supreme court of the territory as to all cases pending in the latter court, at the date of the admission of the state, which were not properly of federal cognizance. It was supposed by counsel that this case belonged to the class which could properly be determined in the supreme court of the state, and accordingly it was, on the 5th day of April, 1877, submitted to that court upon the errors assigned in the record, but that court afterwards, and on the 21st day of June, 1877, ex mero motu, transferred the case to this court. This was doubtless upon the ground that the case is one of which this court would have had jurisdiction if the court had existed on the 24th day of December, 1874, and in which we may proceed, as the successor of the supreme court of the territory, under the act of congress of June 26, 1876 (19 Stat. 61).

Objection is now made by plaintiff in error to the jurisdiction of this court, on the ground that the case does not appear to be of federal character, or if it is of that description, that it belongs in the district court, and not here. The declaration is in the ordinary form in trover, in which the plaintiff alleges that he, as assignee in bankruptcy of Wilcox & Watterson, was possessed of certain lumber and glass which he casually lost, and which afterwards came to the possession of the defendants by finding. Further on, it will appear that this charge is not supported by the evidence given at the trial, but as to the point now under consideration, it is plain that the plaintiff was suing in a representative character, as assignee of the estate of Wilcox & Watterson. He is described as assignee, and he declares that he held the goods in that capacity. This brings the case exactly within the 2d section of the bankrupt act, or section 4979, as it stands in the Revised Statutes. Under that section, circuit courts have always had concurrent jurisdiction with district courts of all actions by an assignee against persons claiming an adverse interest in the estate of a bankrupt. Lathrop v. Drake, 91 U. S. 516. Such actions are not a part of the bankruptcy proceeding, and therefore it is not at all necessary that they should be prosecuted in the court which has jurisdiction of such proceeding. Wiswall v. Campbell, 93 U. S. 347. This provision of section 2 of the bankrupt act was not in any way restricted by the Revised Statutes, or the act of June 22, 1874, but it was explained, if not enlarged by the latter act. By the 3d section of that act, the words "or owing any debt to such bankrupt," were inserted in the original text, and thus was made plain what was perhaps doubtful until then, that the

assignee could sue in the circuit court for any debt due the bankrupt. 18 Stat. 178. The 6th clause of section 711 of the Revised Statutes, if at all applicable to suits of this kind, relates to the jurisdiction of federal courts, as distinguished from state courts, and does not in any way affect the relative jurisdiction of circuit and district courts of the United States. Clearly, then, this is a case of which a circuit court of the United States would have had jurisdiction, if the court had been established at the date when the suit was begun, and therefore it was properly transferred to this court under the act of 1876. Further objection is made, however, that at the date when the suit was brought, the courts of the United States were clothed with exclusive jurisdiction of such actions, and the probate court, having no federal jurisdiction, was without authority to proceed therein. It is conceded that the probate court had no federal jurisdiction, for by the organic act that jurisdiction was conferred on the district court and the supreme court of the territory, and it is a necessary implication from the language used, that probate courts had no such jurisdiction. That fact being admitted, it is necessary to ascertain whether, by the Revised Statutes, or the amendment of 1874, exclusive jurisdiction in actions of this kind was vested in courts of the United States; for if that be true, the judgment of the probate court must be void. In Claflin v. Houseman, 93 U. S. 130, it was held that a state court had, prior to the Revised Statutes, jurisdiction of an action by an assignee to recover assets of the bankrupt. It was then doubted whether the 6th clause of section 711, before mentioned, had not given exclusive jurisdiction of such actions to United States courts; but as the question was not then before the court, it was not decided. In the later case of Wiswall v. Campbell, supra, however, the court has reached the conclusion that such suits are no part of the bankruptcy proceeding, which seems to resolve the doubt in the negative. The clause referred to declares that the courts of the United States shall have exclusive jurisdiction "of all matters and proceedings in bankruptcy," and as this is not a matter or proceeding of that kind, but a suit at law, distinct from and wholly independent of the bankruptcy proceeding, it is not at all affected by that clause. The 2d section of the act of 1874 is more significant. It adds to section 1 of the act of 1867, the following proviso: "That the court having charge of the estate of any bankrupt, may direct that any of the legal assets or debts of the bankrupt, as contradistinguished from equitable demands, shall, when such debt does not exceed five hundred dollars, be collected in the courts of the state where such bankrupt resides, having jurisdiction of claims of such nature and amount." 18 Stat. 178. From this declaration, that certain suits may be brought by an assignee in state courts by direction of the bankruptcy court, it results, by necessary implication, that no other can be so prosecuted—"Expressum facit cessare tacitum." Olcott v. Maclean [11 Hun, 394]. The act of 1867 was silent as to the jurisdiction of state courts in this class of actions, and under that act those courts, in virtue of their general authority, could take cognizance of such suits as well as any other. Claflin v. Houseman, supra. But the act of 1874, by giving them jurisdiction of certain actions, seems to exclude all others, and now it must be said that no suit by an assignee, for a sum exceeding five hundred dollars, can be prosecuted in a state court. The probate court was established by the organic act of the territory, and was not, in fact, a state court, but in respect to its jurisdiction, under the laws of the territory, and its want of jurisdiction, under the laws of the United States, it was so like a state court, that it may be regarded as such in deciding the question presented. Returning now to the record, we find that five hundred dollars was demanded in the declaration, and the judgment was for a less sum. This, it will be observed, is within the amount for which an action at law may be brought in a state court by an assignee; and although it does not appear that the bankruptcy court directed the suit to be brought, it seems that the court had jurisdiction of the action. Objection that there was no direction from the bankruptcy court to bring the suit, cannot be first made in this court, for at best it was matter in abatement of the action only. If properly pleaded and allowed, the assignee would still have been at liberty to sue in the same court, on the same cause of action, by direction of the bankruptcy court, and in a federal court without such direction. By pleading to the declaration, plaintiff in error waived the point, and in support of the judgment the matter of the direction from the bankruptcy court must stand as an admitted fact in the case.

The motion to dismiss will, therefore, be denied, and we will now consider the errors assigned on the record.

At the trial it appeared that the bankrupts executed to plaintiffs in error, May 9, 1873, a chattel mortgage on an engine and boiler then owned by them, to secure certain notes, the last of which became due January 1, 1874. On the 25th day of October, 1873, they executed to one Donnell another mortgage on the same property, the consideration for which is not shown. Both of these mortgages were, so far as appears, made in good faith; but neither the plaintiffs in error nor Donnell took possession of the property before or at the time of the sale of certain glass to plaintiffs in error, which will next be stated. In the month of July, 1874, there was due to plaintiffs in error, on this mortgage, the sum of three hundred and fifty dollars and thirteen cents, for which they agreed to accept, and did accept, from the bankrupts a lot of glass, valued at the amount due them,

and they thereupon released the mortgage on the engine and boiler. It is sufficiently proved that the bankrupts were financially embarrassed and unable to go on with their business at the time the glass was transferred, which was well known to plaintiffs in error, and that the bankrupts suspended business within a day or two after the agreement was made, and on the very day the glass was delivered. A question is made whether the glass was taken at a fair price, but this, upon the evidence, was a matter to be finally decided in the court below, and is not a proper subject of discussion here. Taking all the facts, it is obvious that the transaction, if at all forbidden by the bankrupt act, must be an unlawful payment or preference within the meaning of the 35th section (5128). In that view, it is plain that no such case is made in the declaration. It is not alleged that the bankrupts transferred goods to plaintiffs in error in fraud of the act, within four months or any other time next before the bankruptcy, nor is the date of the adjudication against Wilcox & Watterson given. The evidence is equally silent on these substantial points; and therefore the case fails both as to pleadings and proof. The declaration appears to be adapted to the case where goods of the estate may have been taken from the possession of the assignee, or are wrongfully withheld from him by his bailee, rather than to the case where it is sought to set aside a sale or transfer of the goods as having been made in violation of the act. In the case last mentioned, the facts of the illegal transaction should be set out and the evidence should establish the charge. If we could overlook these defects it is by no means clear that the sale of the goods to plaintiffs in error was an unlawful preference. It is true that the sale was not in the ordinary course of the business of the bankrupts, and that it was in satisfaction of a pre-existing debt; but plaintiffs in error then held a mortgage on other property of the bankrupts, which was, as between the parties, a valid instrument. The circumstance that plaintiffs in error allowed the property covered by the mortgage to remain in the possession of the bankrupts after the condition of the mortgage was broken, in no way affected the validity of that instrument as between the parties. Although void as against the creditors of the bankrupts and purchasers from them, it was still a lien on the property in favor of the mortgagees so long as the property should remain in the possession of the bankrupts. Constant v. Matteson, 22 Ill. 546. Plaintiffs in error might have taken possession of the property under the mortgage, and as that instrument was made more than four months before the bankruptcy, and it is not impeached in any way, they could have held the property against the assignee in bankruptcy and all others who may have acquired title after the date of their mortgage. Holding this lien, if the property mortgaged was of sufficient value, plaintiffs in error were secured of

their demand, and payment to them, whether made in money or goods at a fair price, was not an unlawful preference.

The reason why a debtor in failing circumstances may not pay an unsecured creditor, is that in so doing he bestows on one that in which all of his creditors are entitled to share. In paying a secured creditor he does not commit this offense, for the secured creditor is at all events entitled to withdraw from the estate the amount of his demand. It cannot make any difference in principle whether payment be made out of the estate covered by the lien, or from some other fund. In either case the creditor is entitled to all that is given him. This principle was recognized and applied in Sawyer v. Turpin, 91 U. S. 114. There a creditor took from his debtor as security for his debt a bill of sale of property which was not in the form required, but was nevertheless a valid instrument as between the parties. Afterwards, and within four months of the bankruptcy of the mortgagor and with knowledge of the insolvency of the latter, he took a mortgage on the same property to secure the same demand. The mortgage was sustained on the ground that by it the creditor took no more than he was entitled to under his bill of sale. Although the bill of sale was valid only against the maker and not against creditors, it was, in fact, an exchange of securities, and not an unlawful preference. So here we may say that if plaintiffs in error took goods in fair exchange for the security they held, the transaction was not in fraud of the act. This is, of course, upon the assumed hypothesis that their debt was fully secured, and that the goods were taken at a fair valuation. If any portion of the demand was not secured there may have been an unlawful preference as to the unsecured part; and if they took the goods greatly below their value, that, of itself, may be evidence of fraud. That the engine and boiler were mortgaged to Donnell is not, in any view of the case, a controlling circumstance. The existence of that instrument could not affect the right of plaintiffs in error to accept payment of their demand, nor could it affect the right of the bankrupts to make such payment. If by holding the mortgaged property or by seeking satisfaction out of it, plaintiffs in error could have protected the general creditors, they were not bound to do so; nor were they concerned in the disposition of the property after they had relinquished this mortgage. Whatever right they held was not at all subject to the control or direction of other creditors. These remarks as to the character of the dealing between the bankrupts and plaintiffs in error, are not intended to preclude discussion of the same matter on the trial which may take place in this court. For the error first mentioned, the judgment will be reversed with costs, and defendant in error will have leave to amend his declaration, after which the cause will stand for trial in this court.