### CLARK *v.* EWING, Assignee.

*(District Court, N. D. Illinois. ———, 1880.)*

1. BANKRUPTCY—ACTION BY ASSIGNEE—JURISDICTION OF STATE COURT.
A state court has jurisdiction of an action brought by an assignee in bankruptcy to collect the assets of the bankrupt.

Act of June 22, 1874, § 2, (amendment of the bankrupt law,) construed.

Rev. St. § 711, construed.

*Kidder* v. *Horrobin,* 72 N. Y. 159, followed.

*Goodrich* v. *Wilson,* 119 Mass. 429, followed.

BLODGETT, D. J. This is a bill in equity for relief upon the facts stated in the bill, which are substantially as follows: On or about April 28, 1873, George M. Arnold and George Sisson were adjudged bankrupts by the district court of this

district, and afterwards A. T. Ewing, the defendant in this case, was duly appointed their assignee. Among the assets which came to the hands of the defendant, as such assignee, were two notes of the complainant, Barrett B. Clark, and an alleged claim against him for certain goods belonging to the bankrupts, which he had taken possession of, and which he ought to account and pay for. Sometime in the month of May, 1875, said assignee commenced three suits at law against the complainant in the circuit court of Will county, in this district, two of the suits being upon said notes, and the other upon the claim for the goods. Summons was duly issued in said causes, returnable at the June term of the court, and duly served upon the defendant in time for said term. Complainant alleges that he employed Honorable Jesse O. Norton, an attorney of said court, to defend said causes; that, on the application of Mr. Norton, the rule to plead in said causes was extended several times, and finally until the nineteenth of July, 1875, and said last-named day judgments by default were entered in said causes in the case for the goods for the sum of $240.30—in one of the cases upon the notes for the sum of $1,140.20, and in the other case for $550, besides costs in each case; that Mr. Norton failed to file pleas in said causes by reason of illness, which existed at or about the time of the commencement of said June term, and under which he grew worse, until on the nineteenth of July, and for several days prior thereto, he had been wholly incapable of attending to any business, and to some extent was so far deranged as to be unfit to give any directions in regard to his professional business; that the defendant had a complete defence by way of set-off to all of said suits, and if he had been allowed a trial upon the merits he verily believes he would have been able to establish his said defence.

It further appears that the defendant, after the entry of the said judgments, and of the same term when they were entered, applied to said court to set aside said judgments, and allow him to plead, supporting his application by affidavits showing a meritorious defence; that his application was

denied by the circuit court, and an appeal taken to the supreme court of this state, where the action of the circuit court was affirmed. After the affirmation of the said judgment in the supreme court, complainant filed a bill in chancery in the Will county circuit court, setting up the commencement of said suits; the fact that he had a legal defence thereto, and his inability to assert such defence, by reason of the sickness of his attorney, and praying for relief in the premises, either by a decree granting him a new trial, or that his claims against the bankrupts might be set off against the said judgments. This chancery cause came on for hearing upon a general demurrer to the bill, and upon such hearing was dismissed for want of equity; whereupon an appeal therein was prosecuted to the appellate court of the second district of this state, where said decree was affirmed, and an appeal taken to the supreme court of this state, where, after hearing, the decree of the circuit court was again affirmed.

Complainant now alleges the same matters of defence to said suits at law, and the same reasons for failing to present said defence on the trial of the causes, and insists that the state courts had no jurisdiction of the subject-matter of said suits, and that all which had been done in the state courts in the rendition of said judgment, and in the determination of said several appeals therefrom, was without jurisdiction, and not binding upon the complainant; therefore, he now seeks the aid of this court to relieve him from the effect of the said judgments, invoking in that behalf the second section of the amendment to the bankrupt law, approved June 22, 1874, which reads as follows: "Section 2. That section 1, aforesaid, be and is hereby amended by adding thereto the following words: '*Provided,* that the court having charge of the estate of any bankrupt may direct that any of the legal assets or debts of the bankrupt, as contradistinguished from equitable demands, shall, when such debt does not exceed $500, be collected in the courts of the state where such bankrupt resides, having jurisdiction of claims of such nature and amount.'" And also the sixth clause of section 711 of the Revised Statutes, which vests in the courts of the

United States exclusive jurisdiction "of all matters and proceedings in bankruptcy."

It is urged in behalf of complainant that under the operation of these two statutes the state courts have no jurisdiction whatever in suits brought by assignees in bankruptcy, and that, therefore, all the proceedings against complainant in the state court which he has so far struggled to escape were *coram non judice*. For several years after the passage of the bankrupt law, and before the adoption of the amendment of 1874, it was an open question whether or not the state courts had jurisdiction of suits of a plenary character brought by an assignee in bankruptcy in due course of the administration or settlement of the estate of a bankrupt; but all doubts upon that question were removed by the decisions of the supreme court of the United States in *Lathrop* v. *Drake*, 91 U. S. 516; *Eyster* v. *Gaff*, 91 U. S. 521; *Claflin* v. *Housman*, 93 U. S. 130; and *Cook* v. *Whipple*, 55 N. Y. 150. After the passage of the amendment in question it was held by the supreme court of New York, first department, *Olcott* v. *McLean*, 16 B. R. 79, and in *Frost* v. *Hotchkiss*, 14 B. R. 443, that said amendment gave the federal courts exclusive jurisdiction over all actions by assignees in bankruptcy, and that by the said act of June 22, 1874, state courts were ousted of their jurisdiction over such actions pending before them at the time of its passage. This view of the law was also adopted by the learned district judge of Colorado in the case of *Hallack* v. *Tritch*, 17 Nat. Bank. Reg. 293, the court following substantially the doctrine of *Olcott* v. *McLean*, and saying, in the course of the decision: "From this declaration, that certain suits may be brought by an assignee in state courts by direction of the bankruptcy court, it results by necessary implication that no other can be so prosecuted— *Expressum facit cessare tacitum.* The act of 1867 was silent as to the jurisdiction of the state courts in this class of actions, and under that act the courts, in virtue of their general authority, could take cognizance of such suits as well as any other. But the act of 1874, by giving this jurisdiction of certain actions, seems to exclude all others, and now it must be

said that no suit by an assignee, for a sum exceeding $500, can be prosecuted in a state court."

The same conclusion was arrived at by the supreme court of the state of Indiana in *Sherwood* v. *Burns*, 58 Ind. 502, and *Dodd* v. *Hammock*, 40 Ga., although those courts based their decisions mainly upon the sixth clause of section 711 of the U. S. Revised Statutes, clothing the courts of the United States with exclusive jurisdiction of all matters and proceedings in bankruptcy, holding that as this section was adopted after the commencement of that suit it ousted the state court of jurisdiction in a plenary suit brought by an assignee in bankruptcy. The same question arose, however, before the supreme court of Massachusetts, in *Goodrich* v. *Wilson*, 119 Mass. 429, in which that court, in an opinion delivered by Chief Justice Gray, held that "the effect of the provisions of the act of congress of 1874 is not to confer or take away jurisdiction of the state courts, but simply to allow the federal courts of original jurisdiction to decline to entertain actions of common law to which the assignee is a party, in which the debt demanded is less than the amount which determines the jurisdiction of those courts in other cases." The supreme court of New York for the fourth department, in *Wente* v. *Young*, 17 N. B. R. 90, a case later than that of *Olcott* v. *Mc-Lean*, above quoted, held as follows:

"The only effect of that amendment, (June 22, 1874,) as we read it, is to permit the federal courts to decline to entertain actions brought to recover legal assets of a bankrupt not exceeding $500 in amount. It does not limit or take away the jurisdiction of the state courts, but it authorizes the federal courts, in their discretion, to relieve themselves of a class of cases which it may be supposed can be more conveniently disposed of in the state courts. Subject to the authority thus conferred, the concurrent jurisdiction of the federal and state courts over all actions brought by an assignee to collect the assets of the bankrupt, whether legal or equitable, and of whatever amount, remains as it was before the amendment. The amendment and the Revised Statutes were passed at the same session, and were approved on the same day, and they

are to be read together, so far as they are *in pari materia*. It seems to us their obvious meaning is that the federal courts have exclusive jurisdiction of all matters and proceedings strictly in bankruptcy; that they have concurrent jurisdiction with the state courts of actions which are plenary or ancillary to the proceedings in bankruptcy, among which are actions by assignees to collect the assets of their bankrupts."

The same question came before the court of appeals of the state of New York, in *Kidder* v. *Horrobin*, 72 N. Y. 159, in which that court said: "It is conceded that prior to 1874 state courts had concurrent jurisdiction with the federal courts in actions by assignees in bankruptcy, and cases arising under the bankrupt act. This is conclusively settled by adjudication both in the federal and state courts. It is now accepted as the general rule upon the subject that state courts have concurrent jurisdiction with the federal courts in cases arising under the constitution, laws or treaties of the United States, unless excluded by express provisions, or from the nature of the particular case. By section 1 of the bankrupt act, as originally enacted, March 2, 1867, the district courts of the United States were constituted courts of bankruptcy, with original jurisdiction in their respective districts in all matters and proceedings in bankruptcy, and with authority to hear and adjudicate upon the same according to the provisions of the act. The section declares that the jurisdiction shall extend to certain enumerated cases; among others, 'to the collection of all the assets of the bankrupt.' In construing this section it has been held that, as jurisdiction in bankruptcy was statutory, it was necessarily exclusive in the courts which were designated as courts of bankruptcy, and vested with jurisdiction in bankrupt proceedings by the bankrupt act. But it was also held that the declaration in the same section that the jurisdiction of the district courts should extend to the collection of all of the assets of the bankrupt, did not exclude the jurisdiction of the state courts in actions by the assignee to recover the assets of the bankrupt.

"The first section of the bankrupt act was amended by the act of congress, approved June 22, 1874, by adding thereto

the proviso above quoted.  *  *  *  It is claimed that this proviso is to be construed as conferring upon the state courts jurisdiction of actions for the collection of the debts and assets of the bankrupt, directed by the bankrupt court to be brought in the state courts, and by implication to exclude jurisdiction in all other cases.  We, however, concur in the view expressed by the supreme court of Massachusetts, in *Goodrich* v. *Wilson,* 119 Mass. 429, that the effect of this amendment is not to confer or take away jurisdiction of the state court, but simply to allow the federal courts to decline to entertain actions at common law, to which the assignee is a party, in which the debt demanded is less than the amount which determines the jurisdiction of these courts in other cases.

"It is also claimed that the state courts are deprived of jurisdiction of action by assignees in bankruptcy, to recover debts due to the bankrupt, by section 711 of the Revised Statutes of the United States, which declares that the jurisdiction vested in the courts of the United States in the cases and proceedings mentioned in the section shall be exclusive of the courts of the several states.  This declaration is followed by a specification of eight classes of cases, of which the sixth is 'of all matters and proceedings in bankruptcy.'  The argument is that a suit brought by an assignee in bankruptcy, to collect a debt due to the bankrupt, is a matter and proceeding in bankruptcy, and that the jurisdiction of the state courts is therefore excluded.  We not think that a suit brought for this purpose, is a matter or proceeding in bankruptcy, within the meaning of section 711.  *  *  *

"It may be difficult to make a complete definition of what are matters and proceedings in bankruptcy within section 711, but it may be stated, in general terms, that they are the matters and proceedings which pertain to the special and peculiar jurisdiction of the federal courts as courts of bankruptcy.  The adjudication of the bankruptcy; the appointment of assignees and other agents for the administration of the system; the vesting of the title to the bankrupt's property in the assignee; the marshaling and distribution of the assets;

the discharge of the bankrupt from his debts,—those and other like powers belong to the jurisdiction in bankruptcy, and are matters and proceedings in bankruptcy of which state courts have no jurisdiction. But when a common-law action is an appropriate remedy to enforce a right asserted by an assignee in bankruptcy, whether the right is given by the bankrupt act, or existed in favor of the bankrupt before the bankruptcy, an action to enforce or vindicate the right is not a matter or proceeding in bankruptcy within section 711. The exercise of the original and ordinary jurisdiction of the state courts in such case is, in no proper sense, an exercise of jurisdiction in bankruptcy. The fact that the plaintiff makes his title under the bankrupt act by assignment from the debtor, or by force of operation of the act itself, does not make the suit a matter or proceeding in bankruptcy any more than would a suit brought by an assignee appointed under the state insolvent law, to recover a debt owing to the insolvent, be a proceeding or matter in insolvency. It is quite clear that the state courts are not deprived of jurisdiction of actions, by assignees, to collect the assets of the bankrupt by the section referred to. If this was the intention of congress it is reasonable to suppose that it would have been explicitly declared, and an intention to deprive the state courts of jurisdiction will not be inferred from doubtful language, nor will the words of a statute be extended beyond their strict meaning to accomplish this result."

With the exception of the case of *Hallack* v. *Tritch*, decided by Judge Hallett, from which I have quoted, no decision has come to my knowledge by a federal court construing the effect of the amendment of 1874; and it is to be noted that the learned judge in that case apparently based his decision mainly upon the authority of *Olcott* v. *McLean*. This case may be considered as overruled by the subsequent cases in the same state, and especially by the exhaustive decision of the court of appeals in *Kidder* v. *Horrobin*, which I have just cited. A careful examination of the statute itself, and of the condition of the bankrupt law as expounded by the courts at the time of the enactment of this amendment, leads me to

the conclusion that the construction of this statute given by the supreme court of Massachusetts and the court of appeals of New York contains the better and sounder exposition of the scope and purpose of said amendment. I am, therefore, of opinion that it was not the intention of congress to divest the state courts of jurisdiction in plenary suits brought by assignees in bankruptcy for the purpose of collecting the assets of the bankrupt, and that it is not necessary, since said amendment, before an assignee in bankruptcy can commence a suit in the state court, that he shall obtain the direction or leave of the bankrupt court so to do.

It follows necessarily from this conclusion that the suits in question were lawfully and properly brought in the state court; that the complainant has had his day in that court; that he has appealed both to the law and equity side of that court for relief, and been denied the relief to which he asserts himself entitled, and I do not think that this court should now attempt to review the action of the state court in that behalf. In the chancery suit in the state court the complainant set forth at length the nature of his defence and the reasons why he was unable to present the same to his suits at law. The learned judge of the state court, Mr. Justice Mulkey, in the opinion of the court affirming the judgment of the court below, says: "Assuming, as we must then, that the charges in the bill are true, it is quite manifest that the appellant had a good and meritorious defence to each of the actions in which these judgments were obtained. So far from appellant being indebted to Arnold & Sisson, or their assignee, at the time these judgments were obtained, the bill clearly shows they were indebted to him to the amount of several hundred dollars. It follows, therefore, it would be inequitable and against conscience to enforce their payment; but this alone, as we have just seen, does not warrant a court of equity in interfering to prevent the consummation of such wrong." The court then goes into an analysis of the allegations in the bill, and determines that the complainant and his attorney were guilty of such negligence in the conduct of the common-law cases as to preclude him from invoking relief from the judgments in the

court of equity. The complainant makes the same allegations before this court, and the only reply I can make to him, in the light of the law as I find it, is that his case has been passed upon by a tribunal having full jurisdiction of the subject-matter and parties, and although it may be a hardship, and although he may feel wronged by the conclusions to which the court have come, yet this court cannot now review those positions, and attempt, in the face of the adjudications against him, to undo what that court has done in his case.

It may also well be doubted whether the complainant should be allowed at this late day to come into this court and ask for the relief which he now seeks, after having experimented with the state courts to the end of the litigation, and in each stage of it been denied the relief which he here demands. If, after the rendition of the judgments at law, the defendant in these judgments and the complainant here had seen fit to go into the equity side of the United States district court, which court had the control of the assignee in bankruptcy and could direct what proceedings he should or should not prosecute, and represent the dilemma in which he had been placed by reason of the sickness and death of his attorney, and the danger of his being subjected to the payment of an unjust judgment, that court might, in the exercise of its equity powers, have inquired into the equities between the parties and considered all the claims which the complainant had for relief, and given the complainant such redress as he seemed entitled to; but this complainant chose his own forum. He acquiesced in the assertion on the part of the assignee that the state courts had jurisdiction of the persons and the subject-matter, and chose to litigate the questions involved in the controversy in that forum; and now, having been worsted in that encounter, he should not be heard in this court to review or examine into, or reverse the adverse rulings there made against him.

The demurrer to the bill is, therefore, sustained, and the bill dismissed for want of equity.