## JAMES W. GOODRICH *vs.* JOHN T. WILSON.

Suffolk.   Nov. 11, 1875.— Jan. 10, 1876.   ENDICOTT & LORD, JJ,
absent.

The jurisdiction of a state court over an action by an assignee in bankruptcy against
a person, to whom the bankrupt has made a fraudulent preference, is not excluded
by the bankrupt act, U. S. St. of 1867, *c.* 176, or by the U. S. St. of 1874, *c.* 390,
§ 2.

In an action by an assignee in bankruptcy to recover money alleged to have been
fraudulently paid by the bankrupt to the defendant, it appeared that the defendant
had admitted that a statement made by the bankrupt, at his examination before
the register, in regard to the money paid by him, was true. *Held,* that the plaintiff
was rightly permitted to show what the statement was by any one who heard it,
and the fact that it was made in the course of the bankrupt's examination before
the register did not render it incompetent.

In an action by an assignee in bankruptcy to recover money alleged to have been
fraudulently paid by the bankrupt to the defendant, evidence of what the bank-
rupt said to the defendant, some days before, when he borrowed the money of him,
as to what he wanted it for, or of statements then made by the bankrupt as to his
pecuniary condition, or of the time fixed for repayment, has no bearing on the
question whether the defendant knew or had reasonable cause to believe the bank-
rupt to be insolvent at the time he repaid it.

In an action by an assignee in bankruptcy to recover $1500 alleged to have been
fraudulently paid to the defendant by the bankrupt, the defendant asked the judge
to instruct the jury that if the defendant made a contract with the bankrupt, be-
fore proceedings in bankruptcy had been instituted, to render him personal services
and pay for other legal services to be rendered to or for the bankrupt, the con-
tract would be valid, and the assignee would not be entitled to recover the money
paid under that contract, if the defendant complied with the terms of that con-
tract; and that the payment was not a preference, unless it was made in pursu-
ance of a fraudulent combination between the bankrupt and the defendant.   The
judge refused so to rule, and instructed the jury that a person had a right to re-
tain counsel to assist him in the proper discharge of his duty as a debtor in
court, under the bankrupt act, but that if insolvent he could not retain counsel
for any other purpose; that if the amount was paid as a retainer, with the intent
to prevent so much as was in excess of what was reasonable from going to the
creditors, and the defendant knew that the payer was insolvent, and knew, or
had reasonable cause to know, that he did it for this purpose, the assignee could
recover the whole amount paid. *Held,* that the instructions were sufficiently favor-
able to the defendant, and that he had no ground of exception.

TORT by the assignee in bankruptcy of William F. Wilson, to
recover $2700 alleged to have been paid by the bankrupt to the
defendant in fraud of the bankrupt act.   There were also counts
in contract for the same cause of action.   Writ dated March 18,
1872.

The defendant moved to dismiss the action for want of jurisdiction. This motion was overruled. and the defendant filed an answer containing a general denial, and alleging that the sum of $500, and the further sum of $700, were borrowed of the defendant, and were repaid to him while William F. Wilson was solvent, and before bankruptcy proceedings were contemplated ; and that the sum of $1500 was paid to the defendant as a retainer in certain proceedings instituted against William F. Wilson, including proceedings in bankruptcy.

At the trial in the Superior Court, before *Bacon*, J., the evidence, which was conflicting, tended to show that the firm of William F. Wilson and Company, consisting of said Wilson and Francis D. Harrington, was formed on or about February 1, 1871 ; that on or about October 31, 1871, William F. Wilson took sole charge of the firm's business and proceeded to carry it on, a dispute having arisen between him and Harrington as to their respective rights in the firm ; that on November 3, 1871, William F. Wilson paid to the defendant $500, which he had previously borrowed of him ; that on November 4, William F. Wilson borrowed $700 of the defendant, upon the express agreement to pay it back within three days ; that with this $700 William F. Wilson paid some drafts and a note of the firm, which were due that day ; that thereafter, on the same day, an attachment was made and a keeper placed over the goods in the store of the firm, in a suit of Weil Brothers & Dreyfus, with whom the firm of William F. Wilson & Co. had an open account; that on November 7, William F. Wilson paid back to the defendant the $700 borrowed on the 4th ; that from the 4th to the 9th day of November, negotiations were had with Weil Brothers & Dreyfus with a view to discharge their attachment, when it was discovered that another attachment of $4000 had been put on by Charles H. Baker, a nephew of Harrington, and thereupon William F. Wilson notified the creditors of the firm to be present at the store on November 13 ; that a meeting of the creditors was had at the store on November 13, and the condition of the firm made known from a statement drawn up by the bookkeeper, showing a nominal surplus of $2100 ; that at the creditors' meeting a statement was made by the defendant in behalf of his brother, William F. Wilson, that, in view of the troubles which had arisen, and the con-

sequent injury to the credit of the firm, he, William F. Wilson, would pay said creditors sixty-five cents on the dollar, and assume all the liabilities and carry on the business alone, said payment to be made in the unsecured notes of said William F. Wilson ; that the defendant had acted more or less as counsel for the firm since its formation. The plaintiff offered evidence tending to show that the defendant, for his brother, made the ultimatum of sixty-five cents or bankruptcy, which the defendant did not admit ; that on November 18, William F. Wilson paid to the defendant $1500 as a retainer, for the purpose of engaging such legal counsel as might be necessary in any legal proceedings that might arise out of William F. Wilson's relations with Harrington, or the affairs of the firm ; that on November 23, Harrington, at request of creditors, petitioned said firm into bankruptcy, under the United States bankrupt act ; that, after a denial of bankruptcy by William F. Wilson, and a trial, said firm was adjudicated bankrupt on December 21, 1871, and on December 28, 1871, William F. Wilson filed his schedule showing assets to the amount of $13,836.10, and liabilities to the amount of $33,243.01.

Francis D. Harrington testified that he was present when William F. Wilson was examined in bankruptcy and made a statement in regard to paying money to the defendant ; that afterwards he went to the office of the defendant, and asked him if the statement made by William F. Wilson, as to paying money to the defendant, was true, and the defendant said it was ; that William F. Wilson stated on this examination that he had paid John T. Wilson $1500 retaining fee, and some $1100 for an old debt he owed him ; that he paid $500 for a debt he owed his brother, and $700 for money which he said he had borrowed of Wilson ; that he said this money was paid about November 20. This testimony was admitted subject to the exception of the defendant.

William F. Wilson testified, for the defendant, that he communicated to the defendant, at the time of borrowing the $700, the purpose to which he proposed to put it, and what he wanted it for. He was then asked to state what he told the defendant he wanted it for, as bearing on the question whether the defendant had probable cause to believe the witness insolvent. The evi-

·ience was excluded, and the defendant excepted. The witness was also asked the following questions, all of which were ruled to be inadmissible, and the defendant excepted : " Did you make any statement to him as to your pecuniary condition at the time that you borrowed that money of him ? At the time you got the loan of your brother, was anything said as to the time within which it should be repaid ? Was there any time fixed, at the time you borrowed that money, when it was to be repaid ? "

The witness further testified that he first learned of the Baker attachment when his brother came to his own office from the sheriff's office ; and that this was after the arrangement had been made to pay off the first attachment. He was then asked the following questions, which were ruled out, subject to the defendant's exception : " Had any demand, in any way or shape, been made on you by Baker, for the payment of any claim he had upon you ? Was there anything due to Baker and payable at the time that the attachment was put on ? "

The defendant requested the judge to instruct the jury as follows : " 1. As to the payment of the $1500, if the defendant made a contract with the bankrupt, before proceedings in bankruptcy had been instituted, to render him personal services and procure and pay for other legal services to be rendered to or for the bankrupt, such contract would be valid, and the assignee would not be entitled to recover the amount of money paid under that contract, if the defendant complied with the terms of the contract, and performed such services as may have been required of him, and procured the services of such other counsel as he may have been requested to procure.

" 2. The payment was not a preference ; being founded on a present consideration, it would be a valid payment, unless it was made in pursuance of a fraudulent combination between the bankrupt and the defendant."

The judge declined so to rule, and instructed the jury as follows : " In regard to the retainer, a person who finds himself insolvent has a right, in good faith, to retain counsel to assist him in the proper discharge of his duty as a debtor in court, under the bankrupt law. He has no right to retain counsel with a view to prevent his property from going to his assignees, or to prevent the same from being distributed under the act, or to defeat or in

any way impair, hinder, impede or delay the operation and effect of, or evade the provisions of, this act. He cannot, in other words, hire counsel for the purpose of doing anything but his duty under that law, and that is to give all his property, that the law takes, to his creditors through the assignee. He may employ, and it is necessary that he should, and he may take a reasonable sum from his estate and employ counsel and retain counsel for the purpose of assisting him in the proper discharge of his duty as a bankrupt in court. Further than that he cannot. Of course it would not be in good faith to the law for him to employ counsel for any other purpose. He has a right to employ counsel to assist him in the proper discharge of his duty.

The question in this case will be whether the defendant here was retained and paid the sum of $1500 in good faith for the purpose of a proper and lawful discharge of his obligations under the law. If he was retained for any other purpose; if he was retained for the purpose of hindering, delaying or impeding the provisions of this act, then that retainer was an unlawful retainer, which he had no right to make; and, if the defendant knew it, knew that he was insolvent, and received the money for any such purpose, knowing that that was the intent on the part of William F. Wilson, then the retainer was an unlawful retainer, which was in violation of the provisions of this act, and which the assignee can recover. In order to recover under the provisions of the act, it must be shown, what is not denied in this case, first (that is, the first proposition is not denied) that William F. Wilson was insolvent at that time, or acting in contemplation of insolvency. That proposition there could be no question about. Was the retainer paid with a view to prevent the amount of the retainer, or any part of it, from going to the assignee and being distributed under this act? If it was the purpose of the parties, and known to be such by both of them, to pay for improper services, or to put under the guise and pretence of a retainer a large sum of money in the hands of the defendant, so as to prevent its going to the assignee, or for the purpose of hindering, delaying or impeding the provisions of law, then the whole act of the parties would be vitiated by the fraud, and the whole amount can be recovered in this case. For instance, if the sum of $500 was a proper retainer to be paid, and the parties, with the intent to

prevent the other $1000 from going to the creditors, agreed upon a retainer for $1500, the whole transaction would be vitiated by the fraud, and the assignee would have a right to recover the whole amount. If, then, William F. Wilson was insolvent, or acting in contemplation of insolvency ; if he paid $1500 to his brother, the defendant, as a retainer, and the object and purpose of that was to prevent that sum, or any material portion of that sum, from being distributed under the provisions of the law, and the defendant knew that William F. Wilson was insolvent, and knew, or had reasonable cause to know, that he did it for this purpose, the plaintiff would be entitled to your verdict. On this point I do not intend to express any opinion, but leave it to you to determine. I have stated the principles of law, as I understand them, applicable to this case, and I leave the case in your hands. The burden of proof is on the plaintiff on both propositions."

The jury returned a verdict for the plaintiff for the sum of $2491.50 ; and the defendant alleged exceptions.

*E. Avery*, for the defendant.

*N. B. Bryant*, for the plaintiff.

GRAY, C. J. The jurisdiction conferred upon the courts of the United States as courts of bankruptcy extends to all controversies between the bankrupt and his creditors, and to the collection, marshalling and distribution of his assets. But the jurisdiction of suits at law or equity between the assignee in bankruptcy and any person claiming an adverse interest, is conferred by a distinct provision of the act of Congress, and is not incidental to the jurisdiction in bankruptcy. The jurisdiction in bankruptcy is exclusively vested in the Circuit and District Courts of the United States, and their exercise thereof is not subject to revision by the Supreme Court of the United States. The jurisdiction of suits by or against assignees in bankruptcy is part of the common law and equity jurisdiction of the lower courts of the United States, and is subject to the revision of the Supreme Court of the United States by appeal or writ of error, and does not exclude the concurrent jurisdiction of the state courts. U. S. St. 1867, *c.* 176, §§ 1, 2. *Ward* v. *Jenkins*, 10 Met. 583. *Hanson* v. *Herrick*, 100 Mass. 323, 326. *Otis* v. *Hadley*, 112 Mass. 100. *Smith* v. *Mason*, 14 Wall. 419. *Marshall* v. *Knox*, 16 Wall. 551. *Stickney* v. *Wilt*, 23 Wall.   .

The effect of the provision of the act of Congress of 1874, c. 390, § 2, is not to confer or take away jurisdiction of the state courts, but simply to allow the federal courts of original jurisdiction to decline to entertain actions at common law, to which the assignee is a party, in which the debt demanded is less than the amount which determines the jurisdiction of those courts in other cases.   See U. S. Rev. Sts. §§ 629, 639, 711, 4972, 4979.

The evidence offered by the plaintiff was competent.   Evidence having been introduced tending to show that the defendant admitted that the statement made by the bankrupt in his presence was true, the plaintiff certainly might prove what that statement was, and this might be done by any one who heard it. The fact that it was made in the course of the bankrupt's examination before the register did not render it incompetent. *Lynde* v. *McGregor*, 13 Allen, 182.

The exceptions to the admission of the evidence offered by the defendant cannot be sustained.   What the bankrupt said to the defendant, at the time of borrowing money from him, could have no bearing upon the question whether the defendant knew or had reasonable cause to believe the bankrupt to be insolvent at the time of the repayment of the money, some days afterwards.   The bill of exceptions does not show that the inquiries as to the claim and attachment of Baker were relevant or material.

The question whether the payment of money to the defendant by way of retainer was lawful and valid was rightly submitted to the jury, under instructions sufficiently favorable to him.

*Exceptions overruled.*