## HECHT, REED & Co. v. SPRINGSTEAD ET AL.

1. **Jurisdiction**: VACATION OF JUDGMENT: BANKRUPTCY. The State courts have no jurisdiction in an action to vacate a judgment valid under the laws of the State, but invalid by reason of being in fraud of the Federal bankrupt law. The jurisdiction of the Federal courts, in such case, is exclusive.

*Appeal from Cedar District Court.*

SATURDAY, JUNE 14.

THIS action was originally commenced at law for the possession of one hundred and twenty acres of land. The plaintiffs claim title to the land in virtue of a sheriff's sale thereof, under a judgment by confession in the Cedar Circuit Court, in favor of plaintiffs against one Peter Flansburg. The defendant M. Springstead claims title to the land through a deed

of one B. A. Mink, assignee in bankruptcy, duly appointed pursuant to proceeding in bankruptcy instituted against the said Peter Flansburg.

The defendant, in a cross-petition in equity, assails the validity of the judgment under which the sale to plaintiffs was made, and claims that the judgment is fraudulent under the bankrupt law. To this claim the plaintiffs, among other things, plead the statute of limitations.

The cause was referred to George J. Boal, Esq., who, under the issues presented, reported the facts substantially as follows:

"1. That on the 13th day of January, 1874, Peter Flansburg was indebted to Hecht, Reed & Co., on account of merchandise and moneys advanced, in the sum of two thousand seven hundred and twenty-six dollars and seven cents, and on that day gave his note to plaintiffs; that afterward, on the 29th day of January, 1874, this note was taken up, and a new note for three thousand five hundred dollars given, and a confession or warrant to enter judgment for that sum and one dollar costs; that out of the excess over the amount due Hecht, Reed & Co., which was about two thousand seven hundred and thirty-seven dollars and thirty-three cents at that time, Hecht, Reed & Co. were to pay off certain claims then owing by Flansburg—a note to Hammond, and a note held by McLaughlin as collecting agent, and some other claims; that afterward, on the 31st of January, 1874, the plaintiffs paid Flansburg fifteen dollars, and on the 2d of February one hundred dollars, and paid off the Hammond and McLaughlin notes, and whatever was in fact assumed by them, leaving a balance in their hands in money due Flansburg of eighty-one dollars and fifteen cents, which was due by reason of the judgment being in excess of the actual indebtedness and sums assumed by said Hecht, Reed & Co. That on the 14th day of April, 1874, an execution was issued on this judgment, and the land in controversy was levied upon; that the land was sold on the 13th day of June,

1874, by the sheriff to the plaintiffs for two thousand five hundred dollars; that no redemption was made by any one from this sale, and that when the redemption year expired Hecht, Reed & Co. took a deed from the sheriff and put it upon record.

"2.    That the defendant Springstead has had possession of the land during the years 1875 and 1876, and is still in possession, and that the value of the rents for 1875 was three hundred dollars, and for 1876 one hundred and seventy-five dollars, and that he has paid the taxes for 1875, amounting to $———, in good faith.

"3.    That Peter Flansburg executed a mortgage on the property in question, signed by himself only, on the 13th day of December, 1867, to his brother, Garrett Flansburg, Jr., for the sum of two thousand eight hundred dollars, and that the mortgage was purchased by the plaintiffs and assigned to Fred. Hecht, of said firm, on the 17th of April, 1874.

"4.    That on the 21st day of May, 1874, T. H. Mink filed a petition in bankruptcy against Peter Flansburg, and that on the 14th of June, 1874, he (Flansburg) was adjudged a bankrupt; that B. A. Mink was appointed assignee in bankruptcy, and on the 25th day of August, 1874, the transfer of the bankrupt's estate was made to the assignee; that on the 30th of March, 1875, an order was made by the United States District Court that the assignee sell the property in controversy to Springstead for three thousand three hundred and eighty dollars, and that Springstead give bonds for the payment of said mortgage to Garrett Flansburg (assigned to F. Hecht), amounting to two thousand seven hundred and eighty dollars; that on the 19th of April, 1875, the assignee executed a deed to Springstead for the property, who executed a bond for the payment and the discharge of the mortgage referred to.

"5.    That on the 4th of April, A. D. 1875, Fred. Hecht filed said mortgage debt as a claim against the estate of the bankrupt, and it was allowed as a claim; that afterward

action was instituted by Hecht, for the use of the plaintiffs, on Springstead's bond, to recover the amount due on the Garrett Flansburg note and mortgage. Judgment was recovered October 21, 1875, and on the 19th of November, 1875, Matthew Springstead paid off this judgment in full, three thousand and eighty-three dollars, and costs, fifty-one dollars and twenty-three cents, and Hecht received his money, and the bankrupt was discharged.

"6. That the land in controversy was levied on by the sheriff of Cedar county, under the execution issued on the confessed judgment on the 15th day of May, 1874, and before the petition in bankruptcy was filed; that the land was sold by the sheriff to plaintiffs on the 13th day of June, 1874, and Flansburg adjudged a bankrupt on the 14th of June, 1874; that B. A. Mink, though not yet appointed assignee, was present at the sheriff's sale, and had knowledge of the sale when appointed assignee; that Springstead was a resident of Cedar county, Iowa, and the judgment, execution and return of sale thereunder were of record, and Springstead had, at least, constructive notice of the judgment, seizure and sale of the land when he bought from the assignee.

"7. That the confession of judgment was given by Flansburg and taken by Hecht, Reed & Co., with the purpose of giving them security for the sum due them, and gave them preference over other creditors; that Flansburg was insolvent, actually unable to pay all his debts at the time of making the confession; that Hecht knew that Flansburg's liabilities were much in excess of his assets liable to seizure and sale, or must have known it in the exercise of ordinary judgment.

"8. That there was no concealment on the part of the plaintiffs of their knowledge of Flansburg's insolvency, nor did they purposely conceal the fact that the confession of judgment was given with a view to prefer plaintiffs to other creditors.

"9. That neither Springstead nor the assignee knew, more than two years before the filing of the cross-bill, that

the plaintiffs had knowledge of Flansburg's insolvency at the time of the confession of judgment.

"10. That the assignee knew of the judgment before his appointment as assignee, and afterward gave notice, or procured it to be given at the sale, that the judgment was void, by reason of the proceedings against the judgment defendant in bankruptcy; that with this knowledge he afterward commenced a suit to recover a balance of eighty-one dollars and fifteen cents, due on this judgment to the bankrupt from the plaintiffs."

The referee found, in substance, the following conclusions of law:

"1. That the confession of judgment given by Flansburg to the plaintiffs was given within the time preceding the institution of proceedings in bankruptcy, during which such preference is, by the bankrupt act, prohibited and declared void; that it was given with a view to prefer plaintiffs as creditors, and with knowledge on the part of plaintiffs that Flansburg was insolvent. But while such preference is by the act declared void, such confession is authorized and valid by and under the laws of the State, and the judgment to all intents and purposes is not void, but voidable, and in the proper action, and by the proper tribunal, may be declared void, and set aside. And this is true of the proceedings, sale and deed under it. An action to set aside the judgment for fraud might have been brought by the assignee in bankruptcy at any time within two years from his appointment, and this right of action passed with the sale and conveyance to the defendant Springstead, but without extending or in any way enlarging the time within which the action might be brought.

"2. While, by the act of Congress, the time in which action might have been instituted by the assignee in bankruptcy to recover the assets of the bankrupt or set aside the judgment, or by his assignee, Springstead, is limited to two years, yet where, by the exercise of ordinary diligence, the party seeking the relief has not and could not discover the fraud, the stat-

ute does not begin to run until the discovery, and that the action involved in defendant's counter-claim is not barred by the statute.

"3. The purchase of Springstead was made with full knowledge of the mortgage, and its payment was voluntarily assumed, as well as the consequences of that payment. The mortgage was not a title, but a lien only to secure a debt against the bankrupt, and the receipt of payment thereof does not in any way affect plaintiff's rights under the sheriff's sale. Further, by the act of Springstead in giving his bond he removed the lien from the land, and changed its character to his own personal obligation, at a time when plaintiffs were mere lien holders, without claim of title under the sheriff's sale.

"4. That the action instituted by the assignee in bankruptcy, to recover the unpaid balance of the three thousand five hundred dollars named in the judgment from Flansburg to Hecht, Reed & Co., was a recognition of the validity of that judgment, and effectually determined and cancelled his right of action, and that no right of action remained in the assignee assignable to Springstead.

"5. The counter-claim in this case is not a collateral attack of the judgment, and if a State court has jurisdiction to grant the relief sought this court has jurisdiction to review and set aside the judgment, although a judgment of the Circuit Court.

"6. That a State court has no jurisdiction to grant the relief sought by the counter-claim."

The referee recommended that the equitable counter-claim be dismissed, and found that the plaintiff is entitled to judgment for the possession of the land, and for four hundred and seventy-five dollars as damages, from which should be deducted the taxes paid by defendant for 1875, the amount of which was not shown, but as to which the referee recommended that the court permit proof.

The plaintiffs excepted to paragraphs one, two and five of

the referee's conclusions of law. The plaintiffs moved the court to confirm and sustain the report of the referee as set forth in paragraphs four and six of the conclusions of law, and to render the proper judgment and decree in their favor upon these findings. The defendant Springstead filed exceptions to the report, and moved to set it aside. The court overruled the exceptions of both parties, dismissed the equitable cross-petition, and rendered judgment for plaintiff for the possession of the land, and four hundred and seventy-five dollars damages. On the 24th day of April, 1878, the defendant Springstead appealed. On the 29th day of April, 1878, the plaintiffs appealed from so much of the judgment as overrules their exceptions to the report of the referee.

*Fairall, Bonorden & Ranck, Wolf & Landt* and *McLoud & Ferguson,* for defendants.

*Cook & Richman,* for plaintiffs.

DAY, J.—At the threshold of this case lies the question of the jurisdiction of a State court to entertain the cause of

1. JURISDIC-
TION: vaca-
tion of judg-
ment: bank-
ruptcy.

action set forth in the cross-petition. Upon the question of the jurisdiction of a State court over actions and suits in which a bankrupt or his assignee is a party there has been much conflict of authority. In *Claflin v. Houseman,* 93 U. S., 130, the question was definitely settled in favor of such jurisdiction, under the bankrupt act of March 2, 1867.

Section 4972 of the Revised Statutes of the United States provides: "The jurisdiction conferred upon the District Courts as courts of bankruptcy, shall extend—*First,* to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; *second,* to the collection of all the assets of the bankrupt; *third,* to the ascertainment and liquidation of the liens and other specific claims thereon; *fourth,* to the adjustment of the various priorities and conflicting interests of all

parties; *fifth*, to the marshaling and disposition of the different funds and assets so as to secure the rights of all parties and due distribution of the assets among all creditors; *sixth*, to all acts, matters, and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy."

Section 711 of the Revised Statutes of the United States is as follows : "The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned shall be exclusive of the courts of the several States—*First*, * * * * * *; *second*, * * * * * *; *third*, * * * * * *; *fourth*, * * * * * *; *fifth*, * * * * * *; *sixth*, of all matters and proceedings in bankruptcy."

Referring to this latter provision, it is said in *Claflin v. Houseman, supra*: "The Revised Statutes, whether inadvertently or not, have made the jurisdiction of the United States courts exclusive in all matters and proceedings in bankruptcy. Section 711. Whether this regulation will or will not affect the cognizance of plenary actions and suits, it is not necessary now to determine."

In *Frost v. Hotchkiss*, 14 N. B. R., 443, BARNARD, J., announcing the opinion of the Supreme Court of New York, in an action by an assignee in bankruptcy to recover property alleged to have been conveyed by the bankrupt, in fraud of creditors, says: "I think the Revised Statutes of the United States take away the jurisdiction of the State court in this action, although passed after the action was commenced."

Chapter 390, United States Statutes of 1874, an act to amend and supplement the bankrupt act of 1867, provides, in section 2 : "That section 1 of said act be, and it is hereby, amended by adding thereto the following words : '*Provided*, that the court having charge of the estate of any bankrupt may direct that any of the legal assets or debts of the bank-

rupt, as contradistinguished from equitable demands, shall, when such debt does not exceed five hundred dollars, be collected in the courts of the State where such bankrupt resides having jurisdiction of claims of such nature and amount.'"

In *Olcott v. Maclean,* 10 Hun., 277, the Supreme Court of New York held that under this last statute the United States District Court is vested with exclusive jurisdiction over all actions brought by an assignee to recover property alleged to have been transferred by the bankrupt in violation of section 5128 of the United States Revised Statutes, when the value of such property is greater than five hundred dollars.

In *Goodrich v. Wilson,* 119 Mass., 429, it was held that the jurisdiction of a State court over an action by an assignee in bankruptcy, against a person to whom a bankrupt has made a fraudulent preference, is not excluded by the United States Statutes of 1874, chapter 390, § 2, above quoted, and that the effect of that statute "is not to confer or take away jurisdiction of the State courts, but simply to allow the Federal courts of original jurisdiction to decline to entertain an action at common law to which the assignee is a party, in which the debt demanded is less than the amount which determines the jurisdiction of those courts in other cases."

In *Wente v. Young,* 17 N. B. R., 90, the Supreme Court of New York held that section 711 of the United States Revised Statutes does not extend to actions brought by assignees to collect the assets of bankrupts. In this case, also, the construction placed upon section 2, chapter 390, United States Statutes of 1874, in *Goodrich v. Wilson, supra,* was adopted.

In *Kidder v. Honabin,* 18 N. B. R., 146, the Court of Appeals of New York held that the amendment of 1874 to section 1 of the bankrupt act of 1867 does not confer or take away jurisdiction of the state courts, and that a suit brought by an assignee in bankruptcy to collect a debt due to the bankrupt is not a matter or proceeding within the meaning of section 711 of the Revised Statutes.

Hecht, Reed & Co. v. Springstead.

These are all of the decisions to which our attention has been directed by counsel upon this subject.    It will be observed that the case of *Kidder v. Honabin, supra,* is the only one of a court of last resort which places construction upon section 711 of the Revised Statutes.    The case of *Goodrich v. Wilson,* 119 Mass., 429, simply construes section 2, chapter 390, United States Statutes of 1874.    It may be conceded that a suit brought by an assignee simply to collect a debt due to the bankrupt does not come within the provisions of section 711 of the Revised Statutes.    Such a debt exists under the State laws, independently of any provision of the bankrupt law.    In this case, however, as well said by the referee, "the judgment was authorized and valid by the laws of the State, and it is only under and by virtue of the bankruptcy that the judgment may be disturbed; but for the bankrupt act and the bankruptcy the judgment is effective and valid."    As the action in the cross-petition is brought not to collect a debt due the bankrupt, but to set aside a judgment, valid under the laws of the State, and invalid only because of the bankrupt law, we think the action pertains to a matter and proceeding in bankruptcy, and that, under section 711 of the Revised Statutes, the jurisdiction of the Federal courts is exclusive.

This determination renders unnecessary, if not improper, a consideration of the other questions involved in the appeal.

AFFIRMED.