LYON v. CLARK.

LYON v. HAZLE.

1. BANKRUPTCY—FRAUDULENT CONVEYANCES—BILL TO SET ASIDE
—JURISDICTION OF STATE COURTS.

   The State courts have jurisdiction of proceedings instituted by
   a trustee in bankruptcy to reach property transferred con-
   trary to the provisions of the bankruptcy law.

2. FEDERAL STATUTES—CONSTRUCTION BY FEDERAL COURT—CON-
FLICTING OPINION OF STATE COURT.

   A construction given to a Federal statute by the United States
   Supreme Court should control future decisions of the State
   courts, though not in accord with opinions theretofore an-
   nounced by them.

Appeals from Clinton; Daboll, J. Submitted April 6,
1900; opinion filed May 15, 1900. Rehearing ordered
July 7, 1900; former decision reversed October 2, 1900.

Bills by Willard C. Lyon, trustee in bankruptcy of the
estate of Fred E. Hazle and Frank B. Clark, against
Nathaniel J. Clark and wife, and against Robert Hazle
and others, to set aside certain conveyances alleged to have
been made in fraud of the bankruptcy law. From orders
overruling demurrers to the bills, defendants appeal.
Affirmed.

*Edwin H. Lyon* and *Almond G. Shepard* ( *Otto
Kirchner* and *Bacon & Yerkes*, of counsel ), for com-
plainant.

*High & Everett* (*Spaulding, Norton & Dooling*, of
counsel ), for defendants.

MOORE, J. These cases were heard as one, and the
disposition of one case disposes of both. The complainant
filed bills to set aside certain conveyances of property

made by Fred E. Hazle and Frank B. Clark, as being in fraud of the bankruptcy law. Demurrers were interposed to the bills. The demurrers were overruled. The only question we deem it necessary to discuss is whether the court should take jurisdiction of the cases. The authorities are very conflicting. In the case of *Brigham* v. *Claflin*, 31 Wis. 607 (11 Am. Rep. 623), the court makes use of the following language:

"But the practical difficulties which will necessarily result if a State court at law should entertain suits brought by assignees concerning the property and debts of the bankrupt are scarcely less grave and serious than the complications which might arise in equitable actions. In the first place, it must be obvious that the assertion of a State jurisdiction in such causes will greatly tend to protract and multiply suits in respect to the bankrupt's estate, and will inevitably be a most fruitful source of conflict and collision between the State and Federal tribunals. The object and policy of the bankrupt law manifestly are to collect and distribute the property of the bankrupt among his creditors as promptly as practicable; and these ends can be much more readily accomplished by the United States courts, which have plenary jurisdiction in these matters, than by tribunals acting by different modes, and deriving their powers from other sources. Some of the remarks made by Mr. Justice Story in the case of *Ex parte Christy*, 3 How. 292, in reference to the provisions of the bankrupt law of 1841, express my own views so well upon this subject that I cannot do better than quote them. He says:

"'The obvious design of the bankrupt act of 1841, chap. 9, was to secure a prompt and effectual administration and settlement of the estates of all bankrupts within a limited period. For this purpose it was indispensable that an entire system adequate to that end should be provided by Congress, capable of being worked out through the instrumentality of its own courts, independently of all aid and assistance from any other tribunals over which it could exercise no effectual control. * * * If we are told that resort may be had to the State courts for redress, our answer is that Congress did not intend to trust the working of the bankrupt system solely to the State courts of twenty-six States, which were independent of any control by the general government, and were under no obligations to carry the system into effect. The judicial power of the United

States is, by the Constitution, competent to all such purposes; and Congress, by the act, intended to secure the complete administration of the whole system in its own courts, as it constitutionally might do.' Pages 312, 320.

"These remarks indicate clearly that, according to the judgment of this eminent judge, sound policy and a just regard to public as well as private interests require that the jurisdiction of the district and circuit courts of the United States over all cases arising under the bankrupt law should be exclusive of the State courts. And I cannot but think that Congress has in fact vested in those courts this complete and exclusive jurisdiction over 'all acts, matters, and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt,' including, of course, such jurisdiction and power as may be essential for 'the collection of all the assets of the bankrupt,' independently of all aid and assistance from any State tribunals, over which it could exercise no effectual control. See, also, *McLean* v. *Lafayette Bank*, 3 McLean, 185; *Peck* v. *Jenness*, 7 How. 612. But, even if I had any doubt about this being the proper construction of the bankrupt law, I should still think it was more consistent with the dignity and independence of the State tribunals to decline to take jurisdiction of cases arising under that act, if such jurisdiction theoretically existed, rather than expose themselves to collisions and conflicts with the United States courts, or subject their proceedings to the control of those courts in attempting to adjudicate them."

This case was followed in *Bromley* v. *Goodrich*, 40 Wis. 131 (22 Am. Rep. 685). See *Hecht* v. *Springstead*, 51 Iowa, 502 (1 N. W. 773); *Seavey* v. *Maples*, 94 Ind. 205.

In *Re Newberry*, 97 Fed. 24, the present bankruptcy law was construed by Judge Severens. His conclusion is that bills filed by trustees in bankruptcy to reach property transferred contrary to the provisions of the bankruptcy act should be brought in the United States courts. He makes use of the following language:

"An anomalous state of things would be presented if the bankruptcy court, which is charged with the duty of prompt action in collecting and distributing the estate of

the bankrupt, should be compelled to await, and be balked by, the pendency of proceedings in another court having a jurisdiction entirely foreign to its own, and in no manner subject to it.   The reasons for finding, if fairly practicable, a construction which will avoid such inconvenience, are quite fully stated by Judge Baker in *Carter* v. *Hobbs*, 92 Fed. 594, and, indeed, are obvious."

See *In re Woodbury*, 98 Fed. 833; *In re Hammond*, Id. 845.

The questions involved here are not new in this State. They were discussed in *Voorhies* v. *Frisbie*, 25 Mich. 476 (12 Am. Rep. 291), where Justice CAMPBELL, speaking for the court, used the following language:

"We do not deem it necessary to consider, for the purposes of this case, to what extent assignees may sue at law, on the same footing and with the same rights as private persons, to recover upon contracts or legal liabilities, or in equity, to enforce such liens and obligations as involve the same kind of interests.   No such difficulties would arise at law as may arise in equity, and it may be there are classes of equitable proceedings which could raise no complications.   The present case is one where no cause for equitable interference could exist in this State in favor of private parties, upon the facts alleged.   No creditor who has not obtained a lien or judgment, and who has not, in seeking to enforce that lien or judgment in the ordinary way, found it necessary to assail the conveyance of his debtor's property as fraudulent, can complain of it.   And a transfer for a valuable consideration and in good faith, though made by a person known to be insolvent, would not, in the absence of a bankrupt law, be necessarily void as against any one, as it would not necessarily impair the rights of creditors.   Our laws have never prohibited honestly-made preferences.   The rights of assignees under the bankrupt law rest largely on new and purely statutory grounds.   And where a sufficient power exists in the courts of the United States, not only to enforce those rights, but to do it more conveniently and effectually, in connection with the administration of the whole estate, there is no necessity, and, we think, no propriety, that we enlarge our own jurisdiction to interfere directly in matters beyond our full control.

"The peculiar advantages of equity jurisdiction depend

almost entirely on the power of courts of equity to do full justice by a complete control over the matters in controversy, directly, or by personal coercion of the parties. The rule is almost universal that no interference will be exercised unless this complete power exists to compel justice to be done throughout. Specific performance, which is one of the commonest forms of relief, will seldom be granted where there is not a mutual liability to the jurisdiction, or where the court has not the means of seeing .that its decree shall be carried out. It will not entertain a bill where it could not obtain the means of enforcing a cross-bill, if one should become proper, so as to compel both parties to do equity. In maintaining jurisdiction in favor of a foreign state, in *U. S.* v. *Wagner*, 2 Ch. App. Cas. 582, the English court of chancery maintained the jurisdiction, with the express assertion that, in case a cross-bill should be filed, proceedings should be stayed until the complainant in the original bill should submit to it. And in *U. S.* v. *McRae*, 3 Ch. App. Cas. 79, the principle was further recognized that equities connected with the matter in controversy were entitled to be enforced. This doctrine is elementary, and is incident to equity jurisdiction.

"In all controversies concerning conveyances alleged to have been made in fraud of creditors, it is competent, and generally necessary, to inquire into consideration and notice; and, under the rule in this State, there may be many cases where purchasers, not entitled to hold the entire title, may be protected in their partial payments, and authorized to demand repayment of moneys and cancellation of securities, and in some cases to ask reconveyance of property or reassignment of obligations. There may also be a right to an accounting. There certainly can be no jurisdiction in a State court to deal with a fund in bankruptcy, and direct the course to be taken by the assignee; and the assignee would have no power, in some cases, at least, to submit himself to such a jurisdiction. There are some arrangements which he can make with the leave of the bankrupt court, but not without. His powers and duties, as prescribed by the bankrupt law, would not permit any but the courts taking jurisdiction under the statute to adjust all the equities by compulsion. This, we think, is a conclusive objection to entertaining jurisdiction in such suits as the present, if the jurisdiction could properly be said to exist. But it would be a misnomer to speak of such a jurisdiction as existing, and yet

not plenary. The constitution of our courts of equity gives them no such hampered powers, and it would not be promotive of justice if these limited powers had been given. They could not disregard the bankrupt law, without violating their legal duty; and they have not the means of controlling proceedings under it, which are necessary to prevent injustice otherwise resulting from the application of single clauses, or the separation of transactions, where all need to be administered by one set of tribunals."

This case was followed in *Sheldon* v. *Rounds*, 40 Mich. 425; *McMaster* v. *Campbell*, 41 Mich. 513 (2 N. W. 836).

The execution of the provisions of the bankruptcy law can well be left to the Federal courts, where there will be uniformity in its execution.

The circuit judge should have sustained the demurrers. The decrees are reversed, and the bills dismissed, with costs of both courts.

The other Justices concurred.

### ON REHEARING.

PER CURIAM. Because of the opinion rendered by the Supreme Court of the United States in the late case of *Bardes* v. *Hawarden Bank*, 178 U. S. 524 (20 Sup. Ct. 1000), the court ordered a rehearing in these cases.

In the *Case of Bardes* the court construed the provisions of the Federal bankruptcy act, and reached a different conclusion from the one reached in this court. See, also, *Hicks* v. *Knost*, 178 U. S. 541 (20 Sup. Ct. 1006). We are all of the opinion that the construction given to a Federal statute by the United States Supreme Court should control, though not in accord with the earlier decisions of the State court. Entertaining this view, the opinion heretofore announced in these cases must be reversed, and the action of the lower court sustained.

The decrees of the lower court are affirmed, without costs.