GUIDER v SMITH

Docket Nos. 80577, 80578, 80804. Argued April 5, 1988 (Calendar No. 1). Decided October 24, 1988. Rehearing denied *post,* 1212.

Terrance L. Guider brought an action in the Wayne Circuit Court against Ronald Smith, a Detroit police officer, and the City of Detroit, alleging that the defendants violated his federal civil rights under 42 USC 1983, when Officer Smith shot him in the neck while he was attempting to flee the scene of an apparent breaking and entering, and that the use of deadly force to apprehend him was excessive and unnecessary under the circumstances. In their answer, the defendants raised the defense of qualified immunity, but did not move for summary judgment prior to trial. At the close of the plaintiff's proofs, the court, Paul S. Teranes, J., granted a directed verdict for the city on the ground that the evidence was insufficient to show gross negligence or deliberate indifference on the part of the city in training or supervising its police officers in the use of deadly force, but denied Officer Smith's motion for a directed verdict. Following trial, the court entered judgment on a jury verdict for the plaintiff, awarding compensatory damages and finding that Officer Smith was not entitled to the defense of qualified immunity. The Court of Appeals, C. W. SIMON, J. (MICHAEL J. KELLY, P.J., concurring) (BRONSON, J., not participating), affirmed (Docket Nos. 77323, 79507). The defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice RILEY and Justices BRICKLEY, CAVANAGH, and GRIFFIN, the Supreme Court *held:*

The judgment against the defendant should not be reversed on the basis of the defense of qualified immunity. The trial court correctly determined that the defendant was not entitled to an instruction on qualified immunity, and the trial court's

REFERENCES

Am Jur 2d, Civil Rights §§ 16-18, 268, 269.

Am Jur 2d, States, Territories, and Dependencies §§ 99 *et seq.*

Immunity of public officials from personal liability in civil rights actions brought by public employees under 42 USC 1983. 63 ALR Fed 744.

When is prosecutor entitled to absolute immunity from civil suit for damages under 42 USC 1983: post-Imbler cases. 67 ALR Fed 640.

instructions were responsive to the defendant's actual theory of the case. In addition, the defendant failed to preserve the trial court's denial of his motion for a directed verdict on qualified immunity grounds, contending that the use of force was not excessive rather than that qualified immunity required judgment for him as a matter of law.

1. In addressing the issue of qualified immunity in an action brought under 42 USC 1983, trial courts must consider objective factors: whether the alleged conduct establishes a constitutional violation and whether the constitutional standard was clearly established at the time in question. If the undisputed facts show that the defendant's conduct violated no clearly established constitutional standards, qualified immunity applies as a matter of law. If the law was clearly established, however, the immunity defense will fail unless it can be proved that, because of extraordinary circumstances, the defendant government official neither knew nor should have known the relevant legal standard. The inquiry is whether a reasonable person in the defendant's position could have believed that the actions which violated the right were consistent with the law. Except in extraordinary circumstances, actual knowledge is irrelevant to the determination whether the defendant is entitled to a qualified immunity defense.

2. Ordinarily, the issue of qualified immunity is not appropriate for the jury. The threshold test of a clearly established violation is one of law for the court to decide. If there is a factual dispute, i.e., a genuine issue of material fact, involving an issue on which immunity turns, so that it cannot be determined before trial what the defendants' acts were or whether exceptional circumstances existed, the case should proceed to trial. However, entitlement to the defense of qualified immunity is not lost because of the defendant's failure to move for summary disposition. The properly pleaded defense may be raised prior to, during, or after trial.

3. In this case, the defendant did not move for a directed verdict on qualified immunity grounds, arguing instead that the force used was not excessive and that, therefore, there was no constitutional violation, thus waiving the claim on appeal. The trial court correctly denied the motion on the ground that disputed factual issues regarding probable cause and the reasonableness of the force used by the defendant had been raised by the evidence presented. The instruction of the jury on the question whether the defendant acted in good faith, even if inappropriate, harmed the plaintiff, rather than defendant.

Justice LEVIN concurred in the resolution of the issues of the

defendant's waiver of qualified immunity, the denial of his motion for a directed verdict, and his challenge of the jury instructions.

Justice ARCHER, concurring in the result, stated that the defendant was not entitled to the defense of qualified immunity under 42 USC 1983. Any entitlement to the defense was lost when he failed to move for summary disposition and the case proceeded to trial. To preserve the defense of qualified immunity, a defendant must plead it as an affirmative defense in the first responsive pleading and move for summary disposition prior to trial.

Affirmed.

157 Mich App 92; 403 NW2d 505 (1985) affirmed.

1. CIVIL RIGHTS — PLEADING — GOVERNMENT OFFICIALS — QUALIFIED IMMUNITY.

In addressing the issue of qualified immunity in an action brought under 42 USC 1983, trial courts must consider objective factors: whether the alleged conduct establishes a constitutional violation and whether the constitutional standard was clearly established at the time in question; if the undisputed facts show that the defendant's conduct violated no clearly established constitutional standards, qualified immunity applies as a matter of law; if the law was clearly established, however, the immunity defense will fail unless it can be proved that, because of extraordinary circumstances, the defendant government official neither knew nor should have known the relevant legal standard.

2. CIVIL RIGHTS — PLEADING — GOVERNMENT OFFICIALS — QUALIFIED IMMUNITY.

Ordinarily, the issue of qualified immunity is not appropriate for the jury; the threshold test of a clearly established violation is one of law for the court to decide; if there is a factual dispute, i.e., a genuine issue of material fact, involving an issue on which immunity turns, so that it cannot be determined before trial what the defendants' acts were or whether exceptional circumstances existed, the case should proceed to trial.

3. CIVIL RIGHTS — PLEADING — GOVERNMENT OFFICIALS — QUALIFIED IMMUNITY.

Failure of a defendant government official in an action brought under 42 USC 1983 to move for summary disposition does not waive entitlement to offer the defense of qualified immunity; the properly pleaded defense may be raised prior to, during, or after trial.

*Jaffe, Snider, Raitt & Heuer, P.C.* (by *Brian G. Shannon*), and *Theodore Spearman* for the plaintiff.

*Cooper, Fink & Zausmer, P.C.* (by *Daniel S. Cooper, David H. Fink,* and *Barbara B. Vacketta*), for the defendants.

BOYLE, J. This Court granted leave to consider the issue whether the judgment against the individual defendant should be reversed on the basis of the doctrine of qualified immunity under 42 USC 1983.

This appeal requires the Court to address 1) the substantive law of qualified immunity, and 2) the procedural problems which arise in framing and resolving claims of immunity in civil rights actions against police officers. We hold that the judgment against the defendant should not be reversed on the basis of the defense of qualified immunity.

The trial court correctly determined that the defendant was not entitled to a qualified immunity jury instruction. The trial court's instructions were responsive to the defendant's actual theory of the case. In addition, the defendant failed to preserve the trial court's denial of the motion for directed verdict on qualified immunity grounds, having contended that the use of force was not excessive, rather than that qualified immunity required judgment for the defendant as a matter of law.

The Court of Appeals affirmed the judgment against the defendant. While we affirm the result reached by the Court of Appeals, we do so on different grounds and reject the analysis of the Court of Appeals.

I

Defendant Ronald Smith was a Detroit police

officer assigned to a four-member cruiser unit of
the Thirteenth Precinct. On April 20, 1978, defen-
dant Smith's cruiser unit responded to a police
radio run: a "priority one" call to "1145 Hague,
two Black males, B & E, the rear door." The cruiser
drove into the alley adjacent to 1125 Hague.

The officers saw two men coming down the steps
of the house carrying items of personal property.
The two men were Jeffrey Neely and the plaintiff,
Terrance Guider. When the plaintiff and Neely
saw the police car, they dropped the items they
were carrying and began to run through the back
yard. The defendant jumped out of the car and
ordered the two men to stop, yelling, "Halt, po-
lice." Officer Sparrow, the driver of the police car,
also yelled, "Stop, police," as he got out of the car.

As the defendant got to the back yard, he saw
Neely running straight ahead and the plaintiff
going over the fence. The defendant pursued the
plaintiff to the front of the house and again yelled,
"Halt, police." He continued to pursue the fleeing
plaintiff, who was running toward the freeway,
and for the third time, yelled, "Halt, police." The
plaintiff kept running and, concluding that all
possibilities of capture were exhausted, defendant
Smith then fired one shot at the plaintiff. The
bullet struck the plaintiff in the back of the neck
causing serious injuries.

The defendant did not testify that he believed
the plaintiff was armed, only that the plaintiff
would have escaped if he had reached the freeway.
The plaintiff claimed that, at the time of the
incident, he thought he was carrying Neely's be-
longings from a house that Neely claimed to share
with a girl friend. The plaintiff was arraigned on
May 16, 1978, and eventually placed in a youthful
offender diversion program.

On August 11, 1980, the plaintiff filed a com-
plaint in Wayne Circuit Court against Detroit

police officer Ronald Smith.[1] The plaintiff alleged that the defendant violated his federal civil rights and sought damages pursuant to 42 USC 1983. The plaintiff contended that defendant Smith's use of force was excessive and unnecessary to make the arrest of the plaintiff and thus amounted to a deprivation of plaintiff's constitutional rights to due process, equal protection, and freedom from cruel and unusual punishment.

In response to the complaint, the defendant raised the defense of immunity. A jury trial commenced on September 12, 1983. At the close of plaintiff's proofs, the defendant moved for a directed verdict on the grounds that no constitutional violation occurred and, alternatively, that he was entitled to qualified immunity. The trial court denied the defendant's motion, reasoning that disputed issues of fact remained whether defendant violated the constitutional rights of the plaintiff.[2] The defendant's request for jury instruction regarding a good-faith defense was also denied. The jury returned a verdict in favor of the plaintiff and awarded $472,000 in compensatory damages.

The Court of Appeals affirmed,[3] also reasoning that the defendant was not entitled to a jury instruction regarding qualified immunity. However, the Court of Appeals reasoned that the de-

[1] The original complaint included the City of Detroit as a defendant on the theories 1) that the defendant city's policy to allow the use of deadly force to apprehend a fleeing, breaking and entering suspect was unconstitutional, and 2) that the defendant city was reckless or grossly negligent in training the defendant police officer. At the close of plaintiff's proofs, the trial court granted the city's motion for a directed verdict.

[2] The court decided that fact issues had been raised whether there was probable cause that the defendant would believe the plaintiff was a felon who was fleeing and whether the force used by the defendant was reasonable and necessary under the circumstances.

[3] *Guider v Smith,* 157 Mich App 92; 403 NW2d 505 (1987).

fendant was not entitled to a qualified immunity instruction because he failed to testify that he believed that the shooting was a legal act at the time of the incident. We granted leave to appeal to consider the sole issue whether the judgment against the individual defendant should be reversed on the basis of the doctrine of qualified immunity under 42 USC 1983.[4]

II

The proper test regarding claims of qualified or "good faith" immunity under 42 USC 1983 actions can be found in *Harlow v Fitzgerald*,[5] 457 US 800; 102 S Ct 1717; 73 L Ed 2d 396 (1982). In *Harlow*, the United States Supreme Court altered the substantive law of qualified immunity and established a procedural goal for implementing the defense. Note, *Quick termination of insubstantial civil rights claims: Qualified immunity and procedural fairness*, 38 Vand L R 1543, 1547 (1985). The Court held that a government official performing discretionary functions is entitled to immunity from damages "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow, supra*, p 818.

To understand the effect of *Harlow*, it is necessary to examine the development of the qualified immunity doctrine in civil rights litigation. Prior to *Harlow*, under *Pierson v Ray*, 386 US 547; 87 S Ct 1213; 18 L Ed 2d 288 (1967), police officers were entitled to raise an affirmative defense of good

---

[4] *Guider v Smith*, 429 Mich 858 (1987).

[5] We recognize that *Harlow* and *Anderson v Creighton*, 483 US 635; 107 S Ct 3034; 97 L Ed 2d 523 (1987), have been criticized as unduly expanding the scope of the qualified immunity defense. We must emphasize that our responsibility when resolving claims brought under § 1983 is to adhere to the federal standard.

faith and probable cause to claims of unconstitutional arrests. This qualified immunity defense to liability, for purposes of § 1983 claims, was the equivalent of those previously recognized defenses which could be raised at trial under common law. See 2 Restatement Torts, 2d, § 895D, pp 411-420. Prosser & Keeton, Torts (5th ed), § 132, pp 1056-1060. The defense thus assumed a violation of plaintiff's rights which was excusable.

In *Scheuer v Rhodes*, 416 US 232; 94 S Ct 1683; 40 L Ed 2d 90 (1974), the Court further developed the notion of a qualified, or "good faith" immunity as a defense to liability. The *Scheuer* Court addressed the issue whether the trial court had properly dismissed claims against certain executive officials on the basis that the officials were absolutely immune from suit. The Court rejected the claim of absolute immunity in favor of a qualified immunity standard and held that the qualified immunity defense depended upon a finding of reasonable grounds for a good-faith belief of the public official in the action taken, formed at the time of the incident in question in light of all the circumstances. *Id.,* pp 247-248. Thus, the Court concluded that dismissal was improper because the lower courts had erroneously accepted as a fact the good faith of the executive, and "[t]here was no evidence before the courts from which such a finding of good faith could be properly made . . . ." *Id.,* p 250.

In *Wood v Strickland*, 420 US 308; 95 S Ct 992; 43 L Ed 2d 214 (1975), reh den 421 US 921 (1975), the Court dealt with the immunity issue in the context of a jury trial, again rejecting the defendant's claims of absolute immunity in favor of qualified immunity. The Court held that the appropriate standard to use in deciding whether an official was entitled to qualified immunity encompasses both subjective and objec-

tive factors. *Id.,* p 321. The Court concluded that an officer would not be entitled to immunity if

> he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. [*Id.,* p 322.]

While the Court rejected absolute immunity from liability for executive officials in *Pierson, Scheuer,* and *Wood, supra,* the Court also suggested that damage suits, alleging constitutional violations need not proceed to trial, but could be terminated by motion on the basis of qualified immunity. *Butz v Economou,* 438 US 478, 508; 98 S Ct 2894; 57 L Ed 2d 895 (1978). Thus, the Court emphasized that a "firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits." *Id.*

However, despite this admonition, in actual practice subjective good faith prevented early disposition of litigation because trial courts frequently deemed the subjective component of the defense a question of fact that required resolution by a jury. Balcerzak, *Qualified immunity for government officials: The problem of unconstitutional purpose in civil rights litigation,* 95 Yale L J 126, 132 (1985).

Fifteen years after *Pierson v Ray,* the United States Supreme Court recognized that the *Wood* test for qualified immunity had become disruptive of effective government due to "the costs of trial or the burdens of broad-reaching discovery." *Harlow, supra,* pp 817-818. The Court's response in *Harlow* was to narrowly limit the "subjective element of the good-faith defense," *id.,* p 815, and to redefine

the defense. No longer could qualified immunity be defeated by a bare claim that the defendant acted with the malicious intention to cause injury. Under *Harlow,* government officials are liable for damages only if their conduct violates "clearly established" statutory or constitutional rights of which a reasonable person would have known. If the law governing their actions was not "clearly established," the officers are protected from liability.

Thus, in addressing the qualified immunity question as redefined in *Harlow,* trial courts must consider: 1) whether the alleged conduct establishes a constitutional violation, and 2) whether the constitutional standard was clearly established at the time in question. *Id.,* p 818. If the undisputed facts show that the defendant's conduct violated no clearly established constitutional standards, qualified immunity applies as a matter of law. However, if the law was clearly established, the immunity defense ordinarily would fail unless the official demonstrates extraordinary circumstances, and can prove he neither knew nor should have known the relevant legal standard, in which case the defense should be sustained. *Id.,* p 819. By initially defining the limits of qualified immunity essentially in objective terms, the *Harlow* Court proposed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.,* p 818.[6]

[6] As illustrated in *Anderson v Creighton,* n 5 *supra,* 483 US 644, the meaning of *Harlow* was to make the liability issue more susceptible to summary disposition. The relevant inquiry would be whether viewing the facts in the light most favorable to the plaintiffs, a reasonable official in the defendant's position could have believed his conduct to be lawful considering the state of the law as it existed when the defendant took his challenged actions. An affirmative answer would entitle the defendant to dismissal of the claims, but a negative answer would not foreclose summary disposition if the defendant could establish through discovery that the actions he took

Under this new standard, in appropriate circumstances, the defense of qualified immunity functions as an immunity from suit as well as an affirmative defense to ultimate liability.

III

The Court of Appeals determined that the defendant was not entitled to a jury instruction regarding a qualified immunity defense under 42 USC 1983.[7] This decision was based upon the erroneous belief that a defendant's subjective belief in the legality of his actions at the time of the incident is necessary to support a good-faith defense. The Court of Appeals further erred in assuming that the issue of qualified immunity was an issue appropriate for a jury determination.

The Court of Appeals focused on the facts that "the testimony [of the defendant] did not establish that the defendant believed that shooting the plaintiff was lawful," and that "there was no testimony to show it was reasonable for him to believe this." On this basis the Court concluded that the "defendant was not entitled to good-faith immunity instruction." 157 Mich App 101. That focus is subjective and incorrect under *Harlow, supra.*[8] Assuming that there was a violation of a

were different than those alleged and that his actions were reasonable. Justices Stevens, Brennan, and Marshall accused the Court of creating a rule that "stunningly restricts the constitutional accountability of the police," id., 483 US 647. *The Supreme Court, 1986 term: Leading cases,* 101 Harv L R 119, 224 (1987).

[7] The defendant did not preserve the directed verdict motion on qualified immunity grounds. The only directed verdict argument the defendant ever made in the Court of Appeals was that the uncontroverted facts showed no constitutional violation had occurred.

[8] We assume, arguendo, that *Harlow* is applicable in this cause of action. The United States Supreme Court did not apply the *Harlow* objective reasonableness standard to police officers under 42 USC 1983 until *Malley v Briggs,* 475 US 335; 106 S Ct 1092; 89 L Ed 2d 271 (1986).

clearly established constitutional right, the next inquiry under the *Harlow* standard is whether a reasonable man in the defendant's position could have believed his actions were consistent with the law.

We recognize that the subjective faith of a public official in a claim under § 1983 yet may be relevant in the situation in which the controlling substantive law makes an official's state of mind an essential element of the plaintiff's constitutional claim. See *Martin v Dist of Columbia Metropolitan Police Dep't,* 259 US App DC 31; 812 F2d 1425 (1987). The lawfulness of a challenged act may be dependent upon the actor's motive or intent, and, therefore, the purpose for which the act was undertaken must be analyzed. *Gutierrez v Municipal Court of Southeast Judicial Dist,* 838 F2d 1031, 1051 (CA 9, 1988).[9] In these cases, intent, such as purposeful racial discrimination, is an element of the plaintiff's cause of action. *Turner v Dammon,* 848 F2d 440, 445, n 3 (CA 4, 1988).

Here, however, the defendant's motivation or intent is not an essential element of the challenged conduct. It is therefore irrelevant to this

[9] In addition, plaintiffs should be afforded an opportunity to overcome an asserted defense of immunity with offers of proof of an unconstitutional motive. As the United States Court of Appeals for the Sixth Circuit recognized in *Poe v Haydon,* 853 F2d 418, 431 (CA 6, 1988), under *Harlow* it is impermissible to inquire whether the defendant official actually knew that his conduct was unlawful. In this instance, however, the Court noted that "the relevance of motive or intent is especially applicable to *Poe's* claim of sex discrimination in violation of the equal protection clause" and, as a result, "in deciding whether the appellants violated clearly established rights, there must be an inquiry sensitive to their individual motivations." *Id.,* p 432. Subsequently, findings of a genuine issue of material fact concerning a defendant's motivation for a decision and direct evidence that a defendant was motivated by plaintiff's gender would necessitate a trial in order to determine whether the alleged conduct established a constitutional violation. Further, the test is still "the objective reasonableness of an official's conduct." *Id.,* p 430.

plaintiff's claim. Further, while in some instances the defendant's motive or intent may be relevant to a plaintiff's cause of action, it will rarely be relevant to a defendant's claim of qualified immunity under the *Harlow* standard. What the defendant believed at the time of the incident and the failure of the defendant to testify as to his belief is irrelevant to a determination of the threshold question whether the defendant's undisputed conduct violated clearly established law. Further, except in extraordinary circumstances, actual knowledge is irrelevant to a determination whether the defendant was entitled to a qualified immunity defense under 42 USC 1983.[10]

The defendant did not argue that extraordinary circumstances existed to demonstrate he neither knew nor should have known of the relevant legal standard. Thus, the Court of Appeals erred in its decision that the defendant's subjective belief in the legality of the shooting was necessary to support a qualified immunity defense.

Although the application of the defense of qualified immunity has not been fully clarified, it is clear that the defense of qualified immunity is ordinarily not an appropriate issue for the jury.[11] In instances where the right is clear, if the defendant alleges extraordinary circumstances justifying his failure to follow the law, *Harlow* suggests

---

[10] A subjective inquiry may become relevant where a defendant claims that there were exceptional circumstances which justified his failure to know the clearly settled law. For example, a defendant may claim reliance on advice of counsel, and therefore an inquiry whether there was such reliance would be proper. Nahmod, Civil Rights and Civil Liberties Litigation: The Law of Section 1983 (2d ed), § 8.15, p 508.

[11] The circumstances in which an instruction on good faith would be used seem to be relatively rare. For example, such an instruction would be appropriate in circumstances where a search warrant, albeit an invalid one, is being used. 3 Devitt, Blackmar & Wolff, Federal Jury Practice & Instructions (4th ed), § 103.90, p 30 (1988 Supp).

there could be an issue for the jury.[12] However, since the extraordinary circumstances must be such that the defendant neither knew nor should have known the relevant legal standard, even this exception would turn primarily on objective factors. *Harlow, supra,* p 819.

Again, we recognize that if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which immunity turns, such that it cannot be determined before trial what the defendants' acts were, or whether exceptional circumstances existed, the case will proceed to trial.[13] However, it does not follow that any entitlement to a qualified immunity defense was lost when the

---

[12] It is apparent that the knowledge of the defendant is relevant in extraordinary circumstances. In *Hobson v Wilson,* 237 US App DC 219, 244-245; 737 F2d 1 (1984), the court described the appropriate inquiry as follows:

> [A]ssume plaintiff alleges that defendant violated Right x, and defendant moves for summary judgment on grounds of qualified immunity, claiming Right x was not well-established when the alleged acts were committed and, alternatively, that extraordinary circumstances prevented him both from knowing and having reason to know the relevant legal standard. If the district court judge determines as a matter of law that Right x was well-established, a question of fact might still remain as to whether defendant reasonably neither knew nor should have known of it. The first issue is purely legal and should be susceptible to initial determination on the complaint and summary judgment papers. The latter is potentially an issue for trial, depending on the unique circumstances of each case.

[13] The Court need not (and should not) resolve any disputed questions of material fact. "However, if there are issues of disputed fact upon which the question of immunity turns, . . . the case must proceed to trial." *Green v Carlson,* 826 F2d 647, 652 (CA 7, 1987). Thus, although the immunity issue will frequently be resolved in motion practice, lower federal courts recognize that the qualified immunity defense may be presented in a motion for directed verdict and in a motion for judgment notwithstanding the verdict, i.e., "even after a trial." *Benson v Allphin,* 786 F2d 268, 277, n 19 (CA 7, 1986), cert den 479 US 848; 107 S Ct 172; 93 L Ed 2d 109 (1986) (partial directed verdict and judgment notwithstanding the verdict on qualified immunity grounds); *Saldana v Graza,* 684 F2d 1159 (CA 5, 1982) (directed verdict). See *Bates v Jean,* 745 F2d 1146, 1152 (CA 7, 1984).

defendant failed to move for summary judgment. While the failure to plead qualified immunity in the answer results in a waiver of the defense,[14] *Boyd v Carroll,* 624 F2d 730 (CA 5, 1980), a defendant who properly pleads qualified immunity may raise the issue of a qualified immunity defense prior to, during, or after trial.[15] The threshold test of a clearly established violation is one of law and always will be an issue for the court to decide.

The defense of qualified immunity assumes the occurrence of a violation of a constitutional right.

[14] The purpose of a "raise or waive" rule is to give the opposing party notice of the defense and an opportunity to argue why the claim should not be barred since an affirmative defense may defeat the opposing party's claim. 5 Wright & Miller, Federal Practice and Procedure: Civil (1987 Supp), § 1270, p 69. However, once the defense has pled and the plaintiff is on notice that the issue will be raised, sound policy does not dictate the unique "raise or waive" rule created in the concurring opinion.

[15] The concurring opinion misperceives the language of *Mitchell v Forsyth,* 472 US 511, 526; 105 S Ct 2806; 86 L Ed 2d 411 (1985). When the Court stated that the right "is effectively lost if a case is erroneously permitted to go to trial," it meant that under certain circumstances qualified immunity functions as an immunity from suit, the effectiveness of which is lost if the defendant must go through the time and expense of having to defend insubstantial claims. In concluding that the issue of qualified immunity is immediately appealable, the Court explained the dual nature of qualified immunity as not only "a mere defense to liability" but also "an immunity from suit." *Id.* Thus, the Court's language indicates that the entitlement to immunity from standing trial (as opposed to immunity from liability) would be, as a practical matter, forfeited if appeal on the former issue was delayed until at or after trial on the merits. Nowhere has the Supreme Court stated or implied that immunity from liability must be preserved by way of a summary disposition motion.

As the United States Court of Appeals for the Sixth Circuit has observed, *Mitchell* counsels trial courts to consider three different and relatively independent aspects of immunity: at a motion to dismiss, on motion for summary judgment, and in defense of liability. In *Kennedy v City of Cleveland,* 797 F2d 297, 300 (CA 6, 1986), the court stated:

> *Mitchell* makes it clear that immunity doctrines' protections against liability and against the various burdens of litigating insubstantial claims are conceptually distinct (citation omitted). Consequently, decisions with respect to dismissal or summary judgment, if adverse, do not preclude the interposition of the defense of immunity as a defense . . . .

A determination by a jury that a police officer did not have probable cause to arrest or that excessive force was used in effectuating an arrest would not resolve a qualified immunity question. *Sevigny v Dicksey,* 846 F2d 953, 956 (CA 4, 1988).

A court addressing the issue of qualified immunity must first determine whether the conduct of the police officer violated a plaintiff's rights under the constitution. Then the court must address the issue whether the constitutional standards of the right in question were clearly established. A determination by the court that the alleged conduct of a police officer was a violation of a clearly established right would defeat a defendant's motion for summary disposition on qualified immunity grounds. In appropriate circumstances, the same issue could be raised by a motion for judgment notwithstanding the verdict subsequent to a finding by the jury that, as in the present case, the police officer used excessive force.[16]

Regardless of the stage at which the issue of qualified immunity is addressed, the defense will turn primarily on objective factors, *Harlow, supra,* pp 818-819. Thus, the Court of Appeals discussion of qualified immunity which focused on the defendant's subjective belief is incorrect under *Harlow.*

IV

The narrow issues before this Court are whether the trial court erred in denying the motion for a directed verdict in regard to the defendant police

[16] Under the *Anderson* test, then, if, on objective assessment of the circumstances, an officer situated as the defendant reasonably could have believed that the force used was necessary, the defendant would be granted immunity. In the instant case we must not be concerned with the plaintiff's conduct as this particular defendant perceived it, but as a police officer acting reasonably under the circumstances should have perceived it. *Sevigny v Dicksey, supra,* p 956.

officer, and whether the jury instructions given by the lower court constituted prejudicial error.

In pertinent part, the plaintiff alleged that the use of excessive force by the defendant amounted to a deprivation of constitutional rights to due process, equal protection, and freedom from cruel and unusual punishment. In moving for a directed verdict, defense counsel claimed that there was no violation of a constitutional right. In addition, counsel claimed the defendant was entitled to the directed verdict on the basis of good-faith immunity since a constitutional right to be free from the use of excessive force had not been clearly established at the time of the incident. The trial judge ruled that there may have been a violation of due process[17] if the police officer did not have probable cause or if the force he used was not reasonable under the circumstances.

The trial judge denied the defendant's motion for a directed verdict, explaining that disputed factual issues existed.[18] The trial court believed

[17] The constitutional provision upon which most courts ground a § 1983 claim alleging excessive force is the Fourteenth Amendment— the use of force is treated as a potential deprivation of liberty without due process of law. See *Johnson v Glick,* 481 F2d 1028 (CA 2, 1973) (employing a Fourteenth Amendment substantive due process analysis to analyze an excessive force claim).

Despite the large number of excessive force cases, the Supreme Court has decided only two excessive force cases brought under § 1983. Freyermuth, *Rethinking excessive force,* 1987 Duke L J 692. In *Tennessee v Garner,* 471 US 1; 105 S Ct 1964; 85 L Ed 2d 1 (1985), the Court held that the use of deadly force is a seizure subject to the reasonableness requirements of the Fourth Amendment. In *Whitley v Albers,* 475 US 312; 106 S Ct 1078; 89 L Ed 2d 251 (1986), the Court developed a standard to determine whether the shooting of a prisoner violated the Eighth Amendment. The adherence of circuit courts to substantive due process factors to excessive force cases has been viewed as creating an abstract constitutional right to be free of excessive force.

[18] The trial judge noted, "[t]here are a lot of fact issues that have been raised during the testimony on both the issue of whether or not there was probable cause that Sergeant Smith would believe that plaintiff was a felon who was fleeing the scene, and, secondly, was the

that disputed factual issues were created by the testimony and evidence presented by the plaintiff regarding both the plaintiff's theory of probable cause and his theory of excessive force.[19] On appeal, the defendant challenges only the denial of the directed verdict on excessive force grounds.[20]

Although the United States Supreme Court had not addressed this issue,[21] it appears that the law was clearly established that the use of excessive force[22] violates the Fourteenth Amendment, *Wilson v BeeBe*, 770 F2d 578 (CA 6, 1985) (en banc). Because there remained disputed questions regarding whether the violation occurred, the defendant was not entitled to a directed verdict on the basis of immunity, and the trial court correctly denied the motion.[23] Moreover, the defendant did not

---

force of Sergeant Smith reasonable force under the circumstances." The trial judge incorrectly determined that a disputed factual issue existed as to probable cause. However, the defendant has not appealed the denial of his motion on that ground.

[19] The trial judge noted that there were questions regarding the distance between the plaintiff and the defendant, the number of police officers at the scene, the layout of the area, and the way in which the plaintiff could have escaped.

[20] We take no position on whether plaintiff's alternate theory presented factual issues which were properly submitted to the jury.

[21] The United States Supreme Court has failed to clarify whether only its own pronouncements can clearly establish a constitutional right, or whether lower court decisions will have the same effect. The United States Court of Appeals for the Sixth Circuit, however, has held that in order to be clearly established, a right must be decided by the highest court in the state where the case arose, by a United States Court of Appeals, and by the Supreme Court. *Robinson v Bibb*, 840 F2d 349 (CA 6, 1988).

[22] This is not the right recognized in *Tennessee v Garner*, n 17 *supra*, as Judge KELLY noted below, 157 Mich App 92, 114; 403 NW2d 505 (1987). The *Garner* Court did not establish a constitutional right to be free from the use of excessive force, but simply recognized that the application of force implicated a specific Fourth Amendment right and applied the standard developed to protect that right. To the extent that Judge SIMON's opinion suggests that *Tennessee v Garner* applies to the question of defendant Smith's liability, we express no opinion on the merits of that question.

[23] We assume, arguendo, that *Harlow* immunity applies, while

appeal the denial of defendant's motion for a
directed verdict on qualified immunity grounds,
arguing instead that the force used was not exces-
sive and therefore there was no constitutional
violation. Finding no manifest injustice, we decline
to depart from our traditional rule that a party
waives claims not properly presented for review.
See *Napier v Jacobs,* 429 Mich 222; 414 NW2d 862
(1987).

Nor can we agree that the trial court's jury
instructions amounted to error requiring reversal.
Because defense counsel did not submit proposed
instructions, it is unclear whether she believed
that defendant's good faith was irrelevant on the
proofs submitted or irrelevant on the merits after
*Harlow.* While it was error to submit the question
of good faith to the jury,[24] the instruction given
here imposed the burden of proof on the plaintiff
to prove that the defendant did not act in good
faith.[25] This instruction may have been inappropri-
ate,[26] yet the party harmed was not the defendant

noting that in *Johnson v Glick,* n 17 *supra,* Judge Friendly set forth
four factors for courts to apply, including good faith or a malicious or
sadistic purpose.

[24] The defendant did not properly allege or establish that extraordi-
nary circumstances existed to demonstrate that he neither knew nor
should have known of the relevant legal standard. Thus, it was not
appropriate to submit this question to the jury.

[25] The trial judge recited the following instructions:

Plaintiff has the burden of proof to prove by a preponderance
of the evidence that either the Defendant Ronald Smith did not
have probable cause to believe that the crime of breaking and
entering an occupied dwelling was committed by the Plaintiff,
Terrance Guider, or, that the Defendant Ronald Smith did not
honestly believe that the deadly force was necessary to prevent
the escape of the Plaintiff Terrance Guider, or if he did hon-
estly believe it, then this belief was unreasonable given the
totality of the circumstances—the facts and circumstances the
Defendant Ronald Smith was aware of or reasonably should
have been aware of at that time.

[26] See *Gomez v Toledo,* 446 US 635; 100 S Ct 1920; 64 L Ed 2d 572
(1980).

but, rather, the plaintiff. The jury found that the defendant's use of deadly force was unreasonable, and the verdict is supported by the evidence.

v

CONCLUSION

Under *Harlow,* a police officer performing discretionary functions is entitled to the defense of qualified immunity when his conduct does not violate clearly established constitutional rights of which a reasonable person would have known. If the law was clearly established, the immunity defense will be sustained only if the officer demonstrates extraordinary circumstances and can prove he neither knew nor should have known the relevant legal standard.

We hold that the defendant in this case was not entitled to a defense of qualified immunity. We therefore affirm the judgment of the trial court and the decision of the Court of Appeals.

Riley, C.J., and Brickley, Cavanagh, and Griffin, JJ., concurred with Boyle, J.

Levin, J. I concur in part IV of the opinion of the Court.

Archer, J. (*concurring*). We granted leave to appeal to consider the sole issue whether the judgment against the individual defendant should be reversed on the basis of the doctrine of qualified immunity under 42 USC 1983.[1]

---

[1] 42 USC 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

The majority holds that the defendant failed to preserve the trial court's denial of the motion for directed verdict on qualified immunity grounds, because he contended that the use of force was not excessive, rather than that qualified immunity required judgment for the defendant as a matter of law. On this basis, the majority holds that the defendant was precluded from raising the defense here. Although I agree with the result reached by the majority, I do so on different grounds.

I would hold that the individual defendant was not entitled to the defense of qualified immunity under § 1983. Any entitlement to the defense was lost when defendant Smith failed to move for summary judgment and the case proceeded to trial. Accordingly, I would also affirm the result reached by the Court of Appeals, but for the reasons outlined below.

### FACTS

On April 20, 1978, plaintiff, then eighteen years old, received a telephone call from his friend, Jeff Neely. Neely requested that the plaintiff assist him in removing his belongings from a house Neely claimed he had been sharing with his girl friend. Under Neely's direction, plaintiff parked his car behind a house that Neely said was his girl friend's. Neither plaintiff nor Neely testified regarding the address of this house. They entered

District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

from the side door. Plaintiff made two trips to the car with Neely's alleged belongings.

Defendant Ronald Smith was a Detroit police officer assigned to a four-member cruiser unit of the Thirteenth Precinct.[2] On the night in question, defendant Smith's cruiser unit responded to a police radio run of "1145 Hague, two Black males, [breaking and entering], the rear door." Defendant was familiar with the address because he knew the owner and had been inside the house on a prior occasion. The officers drove into the alley behind the house with their headlights off.

Plaintiff was making his third trip to the car carrying Neely's alleged belongings when he and Neely observed the police car.[3] Plaintiff and Neely dropped the items they were carrying and began to run through the back yard. The police officers observed the two, who fit the breaking and entering description, and ordered them to stop, by yelling "halt, police." After yelling the third time, "halt, police," defendant Smith fired one shot at the plaintiff, striking him in the back of his neck. No warning shot was ever fired.

Officer Smith testified that he fired because he was afraid he would lose the suspect between two houses where, for his own safety, he would not be able to pursue as fast. Defendant Smith did not see anything that would lead him to believe that the plaintiff was armed.

At that time, Michigan law permitted the use of deadly force, when necessary, to apprehend a flee-

---

[2] A cruiser car is a four-door sedan with colored high beam headlights and colored spotlights on the left and right sides of the front windshield. There are flashing lights in the rear window. The words "Detroit Police" and the vehicle number appear on each of the front passenger doors. Usually, there are four officers in each unit. One of the four is generally in uniform, the other three wear plain clothes.

[3] Plaintiff thought he was carrying Neely's belongings from the house. However, Neely knew he was taking items owned by the occupants without their consent.

ing felon.[4] The Detroit Police Department's policy on the use of firearms delineated an even narrower scope for the use of firearms by its officers. The policy limited the use of deadly force to seven felonies, of which breaking and entering was included. Accordingly, an internal police department investigation concluded that defendant Smith's use of deadly force was justified.

On August 11, 1980, plaintiff filed a complaint in Wayne Circuit Court against the City of Detroit and Detroit police officer Ronald Smith, alleging that the defendants violated his federal civil rights under 42 USC 1983. Plaintiff's theory of recovery was that defendant Smith's use of deadly force to apprehend him as he fled the scene of an apparent breaking and entering was excessive and unnecessary under the circumstances and amounted to a deprivation of his constitutional rights.[5] In the answer to the complaint, the defendants raised the defense of qualified immunity.

A trial by jury commenced on September 12, 1983, with the Honorable Paul S. Teranes presiding. Prior to trial, defendants did not file a motion for summary judgment. The City of Detroit's motion for directed verdict was granted at the close of plaintiff's proofs on the ground that the evidence was insufficient to show gross negligence or deliberate indifference on the part of the city in training or supervising its police officers in the use of deadly force. The trial court denied defendant Smith's motion for directed verdict because of the remaining questions whether probable cause existed and whether defendant Smith used only reasonable force under the circumstances. The

---

[4] See, e.g., *Werner v Hartfelder,* 113 Mich App 747, 753; 318 NW2d 825 (1982), lv den 418 Mich 906 (1984).

[5] Subsequently, the trial court granted plaintiff's motion to amend the complaint to explicitly rely on the Fourth Amendment.

trial court considered these questions of fact, to be resolved by the jury.

The case went to the jury concerning the § 1983 liability of defendant Smith. On October 18, 1983, the jury found in favor of the plaintiff and awarded him $472,000 in compensatory damages. Both parties appealed.

The Court of Appeals affirmed the trial court's decision that defendant was not entitled to a qualified immunity defense.[6]

On October 6, 1987, this Court granted leave to appeal to consider the sole issue whether the judgment against the individual defendant should be reversed on the basis of the doctrine of qualified immunity under 42 USC 1983.[7]

### ANALYSIS

In *Harlow v Fitzgerald,* 457 US 800; 102 S Ct 2727; 73 L Ed 2d 396 (1982), the United States Supreme Court held that subjective evidence of an officer's good faith is no longer relevant to an analysis of qualified immunity. As stated in *Harlow:*

> Qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official. *Gomez v Toledo,* 446 US 635 [100 S Ct 1920; 64 L Ed 2d 572] (1980). Decisions of this Court have established that the "good faith" defense has both an "objective" and a "subjective" aspect. The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." *Wood v Strickland,* 420 US 308, 322 [95 S Ct 992; 43 L Ed 2d 214] (1975). The subjective component refers to "permissible intentions." . . .

---

[6] *Guider v Smith,* 157 Mich App 92, 100; 403 NW2d 505 (1987).

[7] *Guider v Smith,* 429 Mich 858 (1987).

The subjective element of the good-faith defense frequently has proved incompatible with our admonition in *Butz* [*v Economou,* 438 US 478; 98 S Ct 2894; 57 L Ed 2d 895 (1978)], that insubstantial claims should not proceed to trial. . . .

In the context of *Butz'* attempted balancing of competing values, it now is clear that substantial costs attend the litigation of the subjective good faith of government officials. Not only are there the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service. There are special costs to "subjective" inquiries of this kind. . . . Judicial inquiry into subjective motivation therefore may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues. Inquiries of this kind can be peculiarly disruptive of effective government.

Consistently with the balance at which we aimed in *Butz,* we conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. *We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.* See *Procunier v Navarette,* 434 US 555, 565 [98 S Ct 855; 55 L Ed 2d 24] (1978); *Wood v Strickland,* 420 US at 322. [*Harlow* at 815-818. Emphasis added.]

*Harlow* set the stage for a new era in the law of qualified immunity. After *Harlow,* qualified immunity is a purely legal question, to be decided by the judge prior to trial.[8] As stated in *Harlow* at 818-819:

---

[8] *Donta v Hooper,* 774 F2d 716, 719 (CA 6, 1985).

Reliance on the objective reasonableness of an
official's conduct, as measured by reference to
clearly established law, should avoid excessive
disruption of government and permit the resolu-
tion of many insubstantial claims on summary
judgment. On summary judgment, the judge ap-
propriately may determine, not only the currently
applicable law, but whether that law was clearly
established at the time an action occurred. If the
law at that time was not clearly established, an
official could not reasonably be expected to antici-
pate subsequent legal developments, nor could he
fairly be said to "know" that the law forbade
conduct not previously identified as unlawful. Un-
til this threshold immunity question is resolved,
discovery should not be allowed. If the law was
clearly established, the immunity defense ordinar-
ily should fail, since a reasonably competent public
official should know the law governing his conduct.
Nevertheless, if the official pleading the defense
claims extraordinary circumstances and can prove
that he neither knew nor should have known of
the relevant legal standard, the defense should be
sustained. *But again, the defense would turn pri-
marily on objective factors.* [Emphasis added.]

Under the test set forth in *Harlow,* § 1983 defen-
dants are entitled to qualified immunity if their
conduct did not violate a clearly established statu-
tory or constitutional right of which a reasonable
person would have known. *Harlow* rejected the
subjective element of the qualified immunity test
in favor of a purely objective standard. We are
bound by the United States Supreme Court's con-
struction of § 1983.[9] However, I do not apply the
*Harlow* analysis to these facts because the defen-

---

[9] The construction given to a federal statute by the United States
Supreme Court controls in state court. *Lyon v Clark,* 124 Mich 100,
105; 82 NW 1058; 83 NW 694 (1900).

dant forfeited any entitlement to qualified immunity by failing to move for summary judgment.[10]

*Harlow* had been decided over a year prior to the start of trial.[11] In *Harlow,* the Court determined that qualified immunity was a threshold question to be resolved on a motion for summary judgment prior to trial.[12] Notwithstanding defendant's awareness of *Harlow,*[13] defendant did not file a motion for summary judgment prior to trial. The importance of filing a motion for summary judgment in § 1983 actions was reëmphasized by the Court in *Mitchell v Forsyth,* 472 US 511; 105 S Ct 2806; 86 L Ed 2d 411 (1985).

In *Mitchell,* the United States Supreme Court held:

> The entitlement [to qualified immunity] is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.[14] [*Id.* at 526.]

[10] The Michigan Court Rules were amended in 1985 to change the name of a summary judgment motion. These motions are now called motions for summary disposition. MCR 2.116.

[11] *Harlow* was decided June 24, 1982. The first day of trial was September 12, 1983.

[12] *Id.* at 818. Additionally, in *Malley v Briggs,* 475 US 335, 341; 106 S Ct 1092; 89 L Ed 2d 271 (1986), the Court reaffirmed its holding in *Harlow,* ruling that the entitlement to qualified immunity is determined by an objective test and that the issue should be resolved on a motion for summary disposition.

[13] Defendant Smith was aware of *Harlow* because the decision was cited by defendant to support his motion for directed verdict at the close of plaintiff's proofs.

[14] Although the focus of the *Mitchell* Court was to resolve the issue whether a lower court ruling on qualified immunity was a "final order" subject to an immediate appeal, the Court nonetheless fashioned its holding with great deference to the basic tenets found in *Harlow.* For example, the text of the opinion preceding the above-quoted language, expresses the following:

> Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immu-

In *Kennedy v City of Cleveland,* 797 F2d 297 (CA 6, 1986), cert den 479 US 1103; 107 S Ct 1334; 94 L Ed 2d 185 (1987), the United States Court of Appeals for the Sixth Circuit considered whether a pretrial denial of qualified immunity was immediately appealable. In resolving this issue, the court interpreted *Mitchell* as describing two stages at which the doctrine of immunity may be interposed in a motion for summary judgment. The first instance arises when the complaint is insufficient to describe a violation of a clearly established and objectively well-known statutory or constitutional right, while in the second instance the complaint may be sufficiently descriptive, yet the claim upon which it is based is insubstantial. In contrast to *Mitchell, Kennedy* further stated that "decisions with respect to dismissal of summary judgment, if adverse, do not preclude the interposition of the defense of immunity as a defense to liability on the merits." 797 F2d 300.

Accordingly, to the extent that *Kennedy* alludes to the defendant's right to raise the qualified immunity defense *at any point during the trial,* it is inconsistent with the United States Supreme Court's decision in *Mitchell* and thus, I do not consider it precedent.

In accordance with the United States Supreme Court's holding in *Mitchell,* we hold that Smith effectively lost any right to a qualified immunity

nity is entitled to dismissal before the commencement of discovery. [*Id.* at 526, quoting *Harlow,* 457 US 818.]

Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary disposition if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts. *Harlow,* thus recognized an entitlement not to stand trial or face the other burdens of litigation conditioned on the resolution of the essentially legal question whether the conduct of which plaintiff complained violated clearly established law. 472 US 526. Thus, the *Mitchell* Court's interpretation of *Harlow* is indeed congruent to the conclusion reached in the case at bar.

defense when the case proceeded to trial. To avoid
this result, defendants in a § 1983 suit must specif-
ically plead qualified immunity in their first re-
sponsive pleading as an affirmative defense[15] and
move for summary disposition prior to trial. If
summary disposition is denied, defendants may
pursue an interlocutory appeal of the denial.[16]
Accord, *Mitchell,* at 14-15.[17]

---

[15] Defendants did not specifically employ the words "qualified im-
munity" in their answer to the complaint. The defense was raised in
the section of the answer captioned, "Special and Affirmative Defen-
ses." It states, in part:

 2. That the individual defendants at all times herein men-
 tioned acted in good faith and without malice and within the
 scope of their duties as police officers of the City of Detroit and
 peace officers of the State of Michigan.

                          *   *   *

 6. That force, if any, used on the plaintiff(s) was reasonable
 and necessary under the circumstances to protect themselves so
 that any injury or damages allegedly suffered by plaintiff(s)
 were due to and/or misconduct in the unlawful assault and
 battery committed by the plaintiff(s) upon these defendant(s).

 7. That the actions of the defendant and its employees in all
 respects were reasonable, proper and legal.

Under *Wood v Strickland,* 420 US 308; 95 S Ct 992; 43 L Ed 2d 214
(1975), reh den 421 US 921 (1975), the qualified immunity defense was
unavailable if either: (1) he knew or reasonably should have known
that the action he took within the sphere of his official responsibility
would violate the plaintiff's clearly established constitutional rights,
or (2) he acted with malicious intent to cause a deprivation of
constitutional rights or other injury. The defendants' answer was
marginally sufficient to address the elements of the *Wood* test for
qualified immunity.

However, *Harlow* eliminated the subjective aspects of the *Wood*
test. Accordingly, an individual § 1983 defendant must now allege
that his actions did not violate a clearly established statutory or
constitutional right of which a reasonable person would have known.
We reiterate that qualified immunity is an affirmative defense that
must be pled by a defendant official. *Harlow* at 815. Defendants who
fail to plead the defense with specificity incur the risk of waiving the
defense and excluding it from the case. See, e.g., *Satchell v Dilworth,*
745 F2d 781, 784 (CA 2, 1984).

[16] See MCR 2.116(J)(2)(a). See also *United States v Archer-Daniels-
Midland Co,* 785 F2d 206, 211 (CA 8, 1986), cert den 481 US 1028; 107
S Ct 1952; 95 L Ed 2d 525 (1987).

[17] See also *Rich v Dollar,* 841 F2d 1558, 1560 (CA 11, 1988).

Defendant moved for a directed verdict at the close of plaintiffs' proofs. This was insufficient to preserve the qualified immunity defense because defendant had already begun to defend the action at trial. By this time, defendant had effectively lost his qualified immunity from suit.[18]

CONCLUSION

I would hold that the doctrine of qualified immunity does not require a reversal of the judgment against defendant Smith on the facts of this case. Any entitlement to the defense was lost when defendant Smith failed to move for summary judgment and the case proceeded to trial. To preserve the qualified immunity defense, a defendant must plead qualified immunity as an affirmative defense in the first responsive pleading and move for summary disposition prior to trial. The result reached by the Court of Appeals is affirmed.

[18] This holding is consistent with *Harlow*'s requirement that the judge determine whether the law was clearly established at the time an action occurred. If the law at that time was not clearly established then an official is entitled to qualified immunity. If the law was clearly established, the immunity defense ordinarily should fail. Until this threshold immunity question is resolved, discovery should not be allowed. *Harlow* at 818-819.